**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HOT SPRINGS DIVISION**

| | |
|---|---|
| **HISCOX DEDICATED CORPORATE MEMBER LIMITED,** | |
| **Plaintiff,** | **Civil Action No. 6:18-cv-06100-RTD** |
| **v.** | **JURY TRIAL DEMANDED** |
| **SUZAN E. TAYLOR,** | |
| **Defendant.** | |

**DEFENDANT SUZAN E. TAYLOR'S ANSWER AND DEFENSES**
**TO HISCOX'S COMPLAINT AND COUNTERCLAIMS**

Defendant Suzan E. Taylor ("Ms. Taylor") files this original answer to Plaintiff Hiscox Dedicated Corporate Member Limited's ("Hiscox") original complaint (the "Complaint") [Dkt. No. 1] and states:

**ANSWER**

1. Ms. Taylor admits the allegations in Paragraph 1 of the Complaint.

2. Ms. Taylor admits that Lloyd's, London (or Lloyd's of London, hereinafter referred to as "Lloyd's") and Hiscox issued Ms. Taylor Policy No. VSRD634943 (the "Policy"), effective February 8, 2018 to February 8, 2019[1], insuring her property located at 654 Springwood Road, Hot Springs National Park, Arkansas 71901, for insurance in excess of four million dollars, including but not limited to, dwelling limits of $2.6 million, personal property limits of $1.3 million, loss of use/rents limits of $260,000, personal liability limits of $500,000, and medical expense limits of $5,000.[2] Ms. Taylor admits that Exhibit A of Plaintiff's Complaint appears to

---

[1] Hiscox's Complaint improperly lists the expiration date as February 9, 2018.
[2] The Policy also includes numerous other provisions in which Lloyd's and Hiscox promised and committed to pay Ms. Taylor, including but not limited to, reasonable expenses for the removal of debris, trees, shrubs,

be a true and correct copy of the Policy.  Ms. Taylor lacks knowledge or information as to the remaining allegations in Paragraph 2 of the Complaint, and on that basis, denies them.

3.      Ms. Taylor states that after Lloyd's issued the Policy in full, she paid a number of premiums, all of which were accepted by Lloyd's and Hiscox.  However, after her home caught fire and burned to the ground on August 6, 2018, Lloyd's and Hiscox did not pay benefits under the Policy and instead attempted to wrongfully rescind the Policy.  As such, Ms. Taylor admits that a dispute exists regarding whether the Policy was properly rescinded due to their newly-alleged claim of "material misrepresentations," and whether Lloyd's and Hiscox's failure to pay for the complete loss of Ms. Taylor's home and belongings, as required by the Policy, was proper.

4.      Ms. Taylor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint, and on that basis, denies them.

5.      Ms. Taylor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 of the Complaint, and on that basis, denies them.

6.      Ms. Taylor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint, and on that basis, denies them.

7.      Ms. Taylor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 of the Complaint, and on that basis, denies them.

8.      Ms. Taylor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint, and on that basis, denies them.

9.      Ms. Taylor admits that she was the named insured under the Policy and a resident of Arkansas.

---

and other plants from her burned property, and the fire department service charge.  To date, neither Lloyd's nor Hiscox have fulfilled that promise as required.

10.     Ms. Taylor admits that there is diversity of citizenship in this case if Hiscox is a citizen of the United Kingdom.  Ms. Taylor lacks knowledge or information as to the remaining allegations in Paragraph 10 of the Complaint, and on that basis, denies them.

11.     Ms. Taylor admits that the Policy at issue includes dwelling limits of $2.6 million and personal property limits of $1.3 million, and adds that the Policy also includes loss of use/rents limits of $260,000, personal liability limits of $500,000, and medical expense limits of $5,000.[3] Ms. Taylor admits that the amount in controversy exceeds $75,000, exclusive of interests and costs.

12.     Ms. Taylor states that after Lloyd's and Hiscox issued the Policy and accepted premiums, they failed to fulfill the terms of the Policy during her time of need after her home burned to the ground.  Ms. Taylor specifically denies making any material misrepresentations on her application.  Moreover, Ms. Taylor states that she applied for the Policy over the telephone and the insurance company agent, Nicky Hodges ("Ms. Hodges"), completed her application, which was known to Lloyd's and Hiscox.  Because Lloyd's and Hiscox failed to pay under the Policy, Ms. Taylor admits that a controversy exists between the parties as to whether the Policy was properly rescinded due to a newly-alleged claim of "material misrepresentations," and whether Lloyd's and Hiscox's failure to pay for the complete loss of Ms. Taylor's home and belongings, as required by the Policy, was proper.

13.     Ms. Taylor admits that venue is proper in this judicial district pursuant to 28 U.S.C. 1391(a), and that a substantial part of the events or omissions giving rise to the claim occurred in this district.

---

[3] The Policy also requires Lloyd's and Hiscox to compensate Ms. Taylor for reasonable expenses for the removal of debris, trees, shrubs, and other plants from her burned property, and the fire department service charge.

14.     Ms. Taylor admits that Lloyd's and Hiscox issued the Policy to her, effective February 8, 2018 to February 8, 2019, covering her home, property, and possessions located at 654 Springwood Road, Hot Springs National Park, Arkansas 71901.  Ms. Taylor admits her lovely home, which was located on the banks of Lake Hamilton with a double boat slip and lake access was classified by Lloyd's and Hiscox in the Policy is a "High Value Homeowners" policy.  Ms. Taylor lacks knowledge or information as to the remaining allegations in Paragraph 14 of the Complaint, and on that basis, denies them.

15.     Ms. Taylor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint, and on that basis, denies them.

16.     Ms. Taylor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint, and on that basis, denies them.

17.     Ms. Taylor denies the allegations in Paragraph 17 as Ms. Hodges, an insurance agent representing Lloyd's and Hiscox, and not an agent of Ms. Taylor, submitted an insurance application which was completed by Ms. Hodges by virtue of Ms. Taylor discussing with her answers to application questions over the telephone.

18.     Ms. Taylor denies the allegations in Paragraph 18 of the Complaint as Ms. Taylor did not herself complete the application, but the application was completed and submitted by Ms. Hodges, who discussed with Ms. Taylor over the phone.  Ms. Taylor states that she understood that Ms. Hodges is and acted as the agent for the insurance company in Ms. Taylor's application process for the Policy, and that she was never told, nor did she agree, that Ms. Hodges was acting as her agent.  Instead, because Lloyd's and Hiscox do not now want to fulfil their commitments under the Policy, they are denying that Ms. Hodges acted as their agent.  Ms. Taylor specifically denies that Ms. Hodges is Ms. Taylor's "retail insurance agent."

19.     Ms. Taylor denies the allegations in Paragraph 19 of the Complaint, as Ms. Hodges was not acting as or was an agent of Ms. Taylor.

20.     Ms. Taylor denies that she completed the application.   As stated above, Ms. Hodges, completed the application after discussing the questions with Ms. Taylor over the telephone.  Ms. Taylor admits that she signed the application through a docu-sign program.

21.     Ms. Taylor admits the allegations in Paragraph 21 of the Complaint.

22.     Ms. Taylor denies the allegations in Paragraph 22 as the Policy was not issued based solely on the representations in the application and Ms. Taylor denies that she received a complete copy of the Policy from "her agent," and she denies that Ms. Hodges was her agent.

23.     Ms. Taylor admits the allegations in Paragraph 23 of the Complaint.

24.     Ms. Taylor admits the allegations in Paragraph 24 of the Complaint.

25.     Ms. Taylor admits that Lloyd's and Hiscox initiated an investigation and deployed a fire investigator to analyze the cause and origin of the fire.  However, Ms. Taylor lacks sufficient knowledge or information to form a belief about the truth of whether an "independent" insurance adjuster was deployed to inspect the property on behalf of Lloyd's and Hiscox, and on that basis, denies the remaining allegations of Paragraph 25.

26.     Ms. Taylor admits that she received a letter from Minuteman Adjusters dated August 21, 2018, regarding a "reservation of rights" (the "Reservation Letter"), but denies that the Reservation Letter reserved any rights to disclaim coverage during the pendency of Lloyd's and Hiscox's investigation.  Ms. Taylor denies that she made any misrepresentation in applying for the Policy and states that Lloyd's and Hiscox only claimed that theory after they had written the Policy, accepted months of premiums and now are attempting to justify their bad faith acts and breach of the Policy.  Ms. Taylor also states that the Reservation Letter noted for the first time that Lloyd's

and Hiscox were investigating "whether there may have been a misrepresentation in the insurance application," but denies that the Reservation Letter reserved Lloyd's and Hiscox's rights to rescind the Policy *ab initio*, declared the Policy void, or declined coverage.

27.     Ms. Taylor admits the allegations in Paragraph 27 of the Complaint.

28.     Ms. Taylor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the Complaint, and on that basis, denies them.

29.     Ms. Taylor admits the allegations in Paragraph 29 of the Complaint.

30.     Ms. Taylor denies the allegations in Paragraph 30 of the Complaint to the extent that Ms. Hodges discussed the application with Ms. Taylor, and Ms. Hodges completed the application and answered this question as "No."

31.     Ms. Taylor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the Complaint, and on that basis, denies them.

32.     Ms. Taylor denies the allegations set out in Paragraph 32 of the Complaint.  Ms. Taylor never received a notice of foreclosure.  Due to a sale of her mortgage from one mortgagee to another, there was no procedure in place to notify Ms. Taylor of the status of her mortgage.  She continued to make timely mortgage payments in the time her mortgage was sold.

33.     Ms. Taylor denies the allegations set out in Paragraph 33 of the Complaint.  Ms. Taylor had no knowledge of any foreclosure, as there was none; thus, she did not make a misrepresentation.  The "Applicant's Statement" above Ms. Taylor's signature specifically states that the information provided in the application is "correct to the best of my knowledge and belief." To the best of Defendant's knowledge and belief, there was not a foreclosure on the insured location, as described above in Paragraph 14.  Further, Lloyd's and Hiscox admits that "foreclosure proceedings" were "in progress" thereby expressly admitting a foreclosure had not taken place.

34.     Ms. Taylor denies the allegations set out in Paragraph 34.  Ms. Taylor did not make a misrepresentation and any alleged "misrepresentation" would not be material.

35.     Ms. Taylor denies the allegations set out in Paragraph 35 of the Complaint. Ms. Taylor had no knowledge of any foreclosure, thus she did not make a misrepresentation.

36.     Ms. Taylor lacks sufficient knowledge or information to form a belief about the truth of whether the Fairfield Bay property was foreclosed upon, and on that basis, denies the allegations in Paragraph 36 of the Complaint.

37.     Ms. Taylor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the Complaint, and on that basis, denies them.

38.     Ms. Taylor denies the allegations set out in Paragraph 38 of the Complaint.  After the mortgage crises around 2010 that affected the United States home loan market, Ms. Taylor returned the home in Fairfield Bay (which shall be referred to as "the home" for purposes of this paragraph only) in or around 2011 by mailing a letter to the mortgagee which notified of her intent to forfeit the home and included the house keys, and stopped all payments.  At the time of the application for the Policy at issue, Ms. Taylor understood the mortgagee had taken the home in 2011 and had no knowledge of any further actions on the home.  Ms. Taylor never received a notice of foreclosure on the home from her mortgage company.  To the best of Ms. Taylor's knowledge and belief, Ms. Taylor had not had a foreclosure during the past five years prior to the application.

39.     Ms. Taylor denies the allegations set out in Paragraph 39.  Ms. Taylor did not make a misrepresentation.  Ms. Taylor's alleged "misrepresentation" was not material.

40.     Ms. Taylor admits the allegations in Paragraph 40 of the Complaint.

41.     Ms. Taylor denies the allegations in Paragraph 41 of the Complaint to the extent that Ms. Hodges discussed the application with Ms. Taylor, and Ms. Hodges answered this question as "No."

42.     Ms. Taylor denies the allegations set out in Paragraph 42.  The alleged "judgment" of March 12, 2013 referenced in this Paragraph is a court order defending exempt assets, and is in no way a judgment.

43.     Ms. Taylor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the Complaint, and on that basis, denies them.

44.     Ms. Taylor denies the allegations set out in Paragraph 44.  Ms. Taylor did not make a misrepresentation.  To the best of Ms. Taylor's knowledge, Ms. Taylor had not had a judgment against her during the prior five years.

45.     Ms. Taylor denies the allegations set out in Paragraph 45.  Ms. Taylor did not make a misrepresentation.  Ms. Taylor's alleged "misrepresentation" was not material.

46.     Ms. Taylor admits the allegations in Paragraph 46 of the Complaint.

47.     Ms. Taylor denies the allegations in Paragraph 47 of the Complaint to the extent that Ms. Hodges discussed the application with Ms. Taylor, and Ms. Hodges answered this question as "yes."  Ms. Taylor admits the remaining allegations in Paragraph 47 of the Complaint.

48.     Ms. Taylor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 of the Complaint, and on that basis, denies them.

49.     Ms. Taylor denies the allegations in Paragraph 49 of the Complaint.  On information and belief, Ms. Taylor's insurance brokerage repeatedly failed to send necessary information and pay premiums to the insurer, resulting in what Lloyd's and Hiscox alleged as a "non-renewal."  Ms. Taylor received no notice of any non-renewal of a policy.  To the best of Ms.

Taylor's knowledge and belief, she had never had coverage declined, cancelled, or non-renewed in the prior three years.

50.     Ms. Taylor denies the allegations set out in Paragraph 50.  Ms. Taylor did not make a misrepresentation.  Ms. Taylor's alleged "misrepresentation" was not material.

51.     Ms. Taylor admits the allegations in Paragraph 51 of the Complaint.

52.     Ms. Taylor denies the allegations in Paragraph 52 of the Complaint to the extent that Ms. Hodges discussed the application with Ms. Taylor, and Ms. Hodges answered this question.  Ms. Taylor admits the remaining allegations in Paragraph 52 of the Complaint.

53.     Ms. Taylor denies the allegations set out in Paragraph 53.  Ms. Taylor withdrew any claim having to do with theft and thus no claim has ever been made or processed on this issue.

54.     Ms. Taylor denies the allegations set out in Paragraph 54.  Ms. Taylor withdrew any claim having to do with theft and thus no claim has ever been made or processed on this issue and no misrepresentation was made on the application.

55.     Ms. Taylor denies the allegations set out in Paragraph 55.  Ms. Taylor did not make a misrepresentation.  Ms. Taylor's alleged "misrepresentation" was not material.

56.     Ms. Taylor admits the allegations in Paragraph 56 of the Complaint.

57.     Ms. Taylor denies the allegations in Paragraph 57 of the Complaint to the extent that Ms. Hodges completed the application and answered this question as "No."

58.     Ms. Taylor denies the allegations set out in Paragraph 58.  Ms. Taylor states that she listed the home for sale in 2015 but it was not listed or advertised by Ms. Taylor for sale at the time of the application.  The home may have continued to be merely listed on Multiple Listing Services after the expiration of the 2015 contract, but Ms. Taylor did not have it under contract for sale.

59.     Ms. Taylor denies the allegations set out in Paragraph 59.   There was no misrepresentation as, to the best of Ms. Taylor's knowledge and belief, Ms. Taylor did not have the home listed for sale at the time of the application.

60.     Ms. Taylor denies the allegations set out in Paragraph 60.  Ms. Taylor did not make a misrepresentation.  Ms. Taylor's alleged "misrepresentation" was not material.  Ms. Taylor states that her home and property were valued at $2.6 Million, to which Lloyd's and Hiscox agreed in writing the Policy.  Ms. Taylor specifically denies that her home was for sale or valued at $1.5 million.

61.     Ms. Taylor denies the allegations set out in Paragraph 61.  Ms. Taylor did not make a misrepresentation.  Moreover, Ms. Taylor's alleged "misrepresentation" was not material.

62.     Ms. Taylor admits the allegations in Paragraph 62 of the Complaint.

63.     Ms. Taylor admits the allegations in Paragraph 63 of the Complaint.

64.     Ms. Taylor admits that Lloyd's and Hiscox wrongfully attempted to return some of the premiums that she had paid under the Policy; however, she sent them back to Lloyd's and Hiscox through her counsel.  To date, all of the premiums that Ms. Taylor paid to Lloyd's and Hiscox are still being held by Lloyd's and Hiscox.  Ms. Taylor lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 64 of the Complaint, and on that basis, denies them.

65.     Paragraph 65 of the Complaint calls for neither admission nor denial.

66.     Paragraph 66 of the Complaint calls for neither admission nor denial.

67.     Ms. Taylor denies the allegations set out in Paragraph 67.  Ms. Taylor did not make misrepresentations in the insurance application.

68.     Ms. Taylor denies the allegations set out in Paragraph 68.

69.     Ms. Taylor denies the allegations set out in Paragraph 69.

70.     Ms. Taylor denies the allegations set out in Paragraph 70, as the Policy was not properly rescinded.  Ms. Taylor timely paid all premiums and made no material misrepresentations in her insurance application.  Arkansas law does not allow an insurance company to rescind coverage based on fraud without consent of the insured or a declaratory judgment when a third-party claim is at issue.  *Douglass v. Nationwide Mut. Ins. Co.*, 323 Ark. 105, 913 S.W.2d 277, 282 (1996).

71.     Paragraph 71 of the Complaint calls for neither admission nor denial.

72.     Paragraph 72 of the Complaint calls for neither admission nor denial.

73.     Ms. Taylor denies the allegations set out in Paragraph 73 as Ms. Taylor did not make false statements in the insurance application that would substantiate a denial of coverage under the Policy.

74.     Paragraph 74 of the Complaint calls for neither admission nor denial.  Ms. Taylor also demands a jury trial on any issues so triable.

75.     Ms. Taylor denies that Hiscox is entitled to any of the relief requested in its Demand for Judgment.  To the extent the Demand for Judgment is interpreted to contain any factual allegations, Ms. Taylor denies them.

76.     Ms. Taylor denies all allegations in the Complaint that are not specifically admitted in this answer.  To the extent she failed to respond to an allegation, it is denied.

### DEFENSES AND AFFIRMATIVE DEFENSES

Ms. Taylor's defenses and affirmative defenses are listed below.  In doing so, Ms. Taylor does not assume any burden of proof on any issue that is Hiscox's burden as a matter of law.  Ms.

Taylor also reserves the right to amend or supplement these defenses as additional facts become known.

77. <u>No Misrepresentations</u> – Ms. Taylor did not make misrepresentations on the application because the answers provided were not false, but were "true, complete and correct to the best of [Ms. Taylor's] knowledge and belief," as stated in the application.

78. <u>No Material Misrepresentations</u> – Assuming Ms. Taylor allegedly made misrepresentations on the application (which she did not), the alleged misrepresentations are not material. Irrelevant and unrelated alleged foreclosures, judgments, prior non-renewals, prior claims, and home sales, in no way effected the risk that the insured property would be destroyed by a house fire.

79. <u>Plaintiff Knew and Acquiesced to Any Alleged Misrepresentations</u> – To the extent there are misrepresentations on the application, those alleged misrepresentations were made by Ms. Hodges, Plaintiff's insurance agent, not Ms. Taylor. The application was completed and submitted by Ms. Hodges after discussion with Ms. Taylor. As such, any alleged misrepresentation imputes to Lloyd's and Hiscox as their agent completed the application and they are bound by the knowledge of their agent.

80. <u>Breach of Contract</u> – As discussed in Paragraphs 96 through 111 below, Lloyd's and Hiscox breached the promises and commitments they made under their contract (the Policy) with Ms. Taylor. Lloyd's and Hiscox's improper attempt to rescind the Policy and denial of Ms. Taylor's claim constitute numerous breaches of the Policy that have damaged Ms. Taylor.

81. <u>Improper Rescission</u> – As discussed in Paragraphs 120 through 125 below, Lloyd's and Hiscox improperly rescinded the Policy at issue in this case. First, Ms. Taylor paid all premiums through the time of the loss of her home, and she made no material misrepresentations

on her application.  As such, any attempted rescission was wrongful.  Second, Arkansas law does not allow an insurance company to rescind coverage without consent of the insured or a declaratory judgment when a third-party claim is at issue.  *Douglass*, 913 S.W.2d at 280.  Lloyd's and Hiscox improperly attempted to rescind the Policy without receiving consent from Ms. Taylor, a declaratory judgment, or properly notifying the mortgagee, an innocent third-party.

82.     Fed. R. Civ. P. 8(c) Defenses – Pursuant to Federal Rule of Civil Procedure 8(c), Ms. Taylor asserts the following affirmative defenses: assumption of risk and any other applicable affirmative defenses that might be available.

83.     Necessary and Indispensable Parties – All necessary and indispensable parties to this action have not been included pursuant to Fed. R. Civ. P. 19.

84.     Unclean Hands – Hiscox's claims are barred by the doctrine of unclean hands.

85.     Mitigation of Damages – Lloyd's and Hiscox failed to act reasonably to mitigate damages.

86.     Ambiguous Language Construed Against Lloyd's and Hiscox – Under Arkansas law, provisions contained in an insurance policy must be construed most strongly against the insurance company which prepared it.

87.     Failure to Provide Proof of Loss Form – Lloyd's and Hiscox failed to provide Ms. Taylor with a proof of loss form within 20 days of the loss being reported to them and therefore cannot require a proof of loss under Ark. Code Ann. § 23-79-126.

88.     Ms. Taylor's investigation of defenses is continuing, and Ms. Taylor expressly reserves the right to assert any additional defenses under the Federal Rules of Civil Procedure, the laws of the United States, the laws of Arkansas, and any other defenses, at law or in equity, that

may now exist or be available in the future based upon discovery and further investigation in this case.

## COUNTERCLAIMS

89.     Pursuant to Federal Rule of Civil Procedure 13, and without waiver of any of her rights, including the right to seek dismissal and/or transfer of this action, Defendant Ms. Taylor, by way of Counterclaims against Plaintiff Hiscox and Lloyd's, alleges:

## PARTIES

90.     Ms. Taylor is an individual and resident of the State of Arkansas.

91.     Upon information and belief, Plaintiff Hiscox is a corporation incorporated under the laws of the United Kingdom, with its principal place of business located in London, England.[4]

92.     Upon information and belief, third-party defendant Lloyd's is a corporation incorporated under the laws of the United Kingdom, with its principal place of business located in London, England.[5]

## JURISDICTION AND VENUE

93.     This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1332.  Diversity of citizenship exists because Hiscox and Lloyd's are citizens of the United Kingdom, and Ms. Taylor is a citizen of the State of Arkansas.  The amount in controversy exceeds $75,000, as the Policy at issue includes dwelling limits of $2.6 million and personal property limits of $1.3 million, and additional amounts as set forth in the Policy described herein.

94.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

---

[4] According to Plaintiff's Complaint, Hiscox represents the underwriters who subscribed to Ms. Taylor's Policy.  Dkt. No. 1 at § 5-8.  As such, Ms. Taylor does not plan to add any additional underwriters at this time.  However, Ms. Taylor reserves her right to bring additional cause(s) of action against these underwriters should they refuse to honor any judgment entered against Hiscox.
[5] Ms. Taylor intends to serve a summons and third-party complaint on Lloyd's under Fed. R. Civ. P. 14.

95.     Hiscox has consented to personal jurisdiction by commencing its action for declaratory judgment, as set forth in Plaintiff's Complaint.

## FIRST COUNTERCLAIM
### (Breach of Contract)

96.     Ms. Taylor repeats and realleges each allegation set forth in Paragraphs 1 through 95 of these counterclaims as though fully set forth herein.

97.     Lloyd's and Hiscox issued Ms. Taylor a High Value Homeowners policy, Policy No. VSRD634943, providing property insurance for the structure and personal property located at 654 Springwood Road, Hot Springs National Park, Arkansas 71901, effective February 8, 2018. Dkt. No. 1 at ¶¶ 2, 14.

98.     Upon information and belief, certain Underwriters at Lloyd's subscribed to the Policy, including Hiscox.

99.     Ms. Taylor timely paid all premiums as required under the Policy.

100.    All conditions predicate under the Policy have been made by Ms. Taylor.

101.    Lloyd's and Hiscox failed to provide Ms. Taylor with a Proof of Loss Form within twenty days as required by Ark. Code Ann. § 23-79-126.

102.    Ms. Taylor's Policy included dwelling limits of $2.6 million, personal property limits of $1.3 million, loss of use limits of $260,000, personal liability limits of $500,000, and medical expense limits of $5,000.  Dkt. No. 1-1 at p. 10.  The Policy also covered other losses, including but not limited to debris removal, tree removal, destruction of plants, and fire department charges.  *See* Dkt. No. 1-1.  Lloyd's and Hiscox failed to pay the vast majority of these benefits.

103.    Ms. Taylor lost everything at 2:30pm on August 6, 2018 when a massive fire burned her approximately 10,000 square foot home to the ground, destroying nearly all of her earthly

belongings.  Although Ms. Taylor was out of state returning her ailing relative to Texas when the fire happened, several neighbors and boaters reported the fire to the fire department.  However, when the fire department first arrived, the incline of the street and driveway prevented the fire truck from being able to access the home.  As such, on information and belief, several minutes passed before the fire department could begin to fight the fire—which by then had spread throughout the entire multi-story home.

104.   Ms. Taylor immediately began the process of recovering from this horrific tragedy and spoke to Mr. Brad Bettis, Lloyd's and Hiscox's local insurance adjuster, the day after the fire. Ms. Taylor returned home to Hot Springs, Arkansas a few days later on Thursday, August 9, 2019. Now homeless and with nowhere else to go, Ms. Taylor and her two cats checked into the La Quinta Inn.

105.   Despite numerous empty promises from everyone that Ms. Taylor dealt with from the insurance company, it was clear from the very beginning that they never intended to honor their word and provide Ms. Taylor what she was rightfully owed under the Policy.  Despite never missing a payment and paying $8,460.42 in premiums from February 2018 through October 2018, Lloyd's and Hiscox breached their contract with Ms. Taylor numerous times by failing to honor the Policy.

106.   Specifically, Lloyd's and Hiscox breached the Policy by failing to compensate Ms. Taylor for the loss of her dwelling, loss of personal property, loss of the use of her residence premises, reasonable expense for the removal of debris, trees, shrubs, and other plants from her burned property, and for the fire department service charge.[6]   Instead, Lloyd's and Hiscox

---

[6] This is not intended to be an exhaustive list of Hiscox's breaches, and Ms. Taylor is certain that discovery will uncover additional breaches.

unilaterally rescinded the Policy, albeit improperly[7], and filed this lawsuit for Declaratory Judgment.

107.    There is no dispute that Ms. Taylor's Policy was a valid and enforceable contract. Ms. Taylor paid $8,460.42 through October 2018 in exchange for Lloyd's and Hiscox's promise to act should certain events damage Ms. Taylor's property, such as the August 6, 2018 massive fire, which by Hiscox's own admission burned Ms. Taylor's "entire dwelling to the ground."  Dkt. No. 1 at ¶ 24.  Ms. Taylor timely paid her premiums as required by the Policy, but Lloyd's and Hiscox failed to honor the contract when the time came for them to honor their end of the bargain.

108.    Lloyd's and Hiscox's failure to honor their promises under the Policy, breach of contract, improper rescission of the Policy, and denial of Ms. Taylor's claim has irreparably harmed Ms. Taylor.  Notwithstanding the fact that Ms. Taylor remains homeless with minimal earthly possessions, Lloyd's and Hiscox's breaches will also likely cause Ms. Taylor to lose the land in which the remains of Ms. Taylor's burned dwelling and personal property remain to this day.

109.    Despite Ms. Taylor's demands, Lloyd's and Hiscox have failed and refuse to fairly and adequately compensate Ms. Taylor, as required by numerous provisions in the Policy.  Lloyd's and Hiscox's refusal constitutes numerous breaches of the Policy.

110.    As a result of Lloyd's and Hiscox's breach of the Policy, Ms. Taylor has incurred damages and will be further damaged in the future.

111.    Moreover, it is necessary for Ms. Taylor to retain counsel and defend herself against Lloyd's and Hiscox's improper rescission, denial of claim, and request for declaratory judgment.

---

[7] Arkansas law does not allow an insurance company to rescind coverage based on fraud without consent of the insured or a declaratory judgment when a third-party claim is at issue.  *Douglass*, 913 S.W.2d at 280. Ms. Taylor's property was subject to a mortgage, as disclosed in her application for insurance and discussed during Ms. Taylor's examination under oath.

As such, Ms. Taylor is entitled to recover her reasonable and necessary attorneys' fees in the matter pursuant to Ark. Code Ann. § 16-22-308.  Ms. Taylor is also entitled to damages and attorney fees on loss claims under Ark. Code Ann. § 23-79-208.

## SECOND COUNTERCLAIM
### (Bad Faith)

112.     Ms. Taylor repeats and realleges each allegation set forth in Paragraphs 1 through 111 of these counterclaims as though fully set forth herein.

113.     Lloyd's and Hiscox's actions and handling of Ms. Taylor's claim constitutes the tort of bad faith.  Ms. Taylor is entitled to "twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss." Ark. Code Ann. § 23-79-208.

114.     Notwithstanding the fact that Ms. Taylor timely paid all of her premiums to Lloyd's and Hiscox for various policies over a number of years, including paying over $8,000 in premiums for the Policy at issue, Lloyd's and Hiscox engaged in dishonest, malicious, and oppressive misconduct, without a good faith defense, in an attempt to avoid their liability under the Policy.

115.     Rather than paying Ms. Taylor's benefits under the Policy, Lloyd's and Hiscox sent a fire inspector to the property several times in hopes of finding a way to avoid honoring the Policy. Upon information and belief, their inspections revealed no evidence of arson or foul play. Moreover, despite any evidence that would warrant the use of accelerant canines, Lloyd's and Hiscox also brought such canines to the property multiple times in hopes of finding accelerants or to be able to claim arson.  Unsurprisingly, the canines, like the fire inspectors, were unable to detect any evidence of arson or foul play.

116.     Lloyd's and Hiscox's bad faith misconduct did not stop there—they delayed this investigation for months while leading Ms. Taylor to believe that they would pay for her temporary

dwellings and replace basic clothing and living needs—all of which were covered under the Policy. Lloyd's and Hiscox also failed to pay for the removal of debris on Ms. Taylor's property.[8]  During this delay, upon information and belief, a contractor that previously worked on Ms. Taylor's home was asked to wear a wire and get Ms. Taylor to admit that she burned her house down or engaged in insurance fraud.  Ms. Taylor would not make any such statement as it simply is not true.  Having their attempt to prove arson thwarted, Lloyd's and Hiscox asked Ms. Taylor to give a "sworn statement" which she readily did.  Only after she complied with giving the statement did Lloyd's and Hiscox decide to attempt to wrongfully rescind the Policy in a further attempt to not fulfill their promises under the Policy.

117.    While Lloyd's and Hiscox desperately searched for a way to avoid their liability under the Policy, Lloyd's, Hiscox, and their many representatives repeatedly told Ms. Taylor that they were working diligently to get her emergency funding to provide her with living conditions reasonably close to her normal standard of living, as required under the Policy.  Meanwhile, Ms. Taylor, homeless with nowhere to go, was living in a small room at the La Quinta Inn with her two cats while Lloyd's and Hiscox continued their witch-hunt and refused to pay Ms. Taylor what she was owed.

118.    After numerous dead ends, Lloyd's and Hiscox changed direction and focused on another way to avoid liability under the Policy.  They attempted to construct alleged material misrepresentations in Ms. Taylor's insurance application.  Desperate to avoid their commitment to Ms. Taylor, Lloyd's and Hiscox wrongfully unilaterally rescinded the Policy on October 15, 2018.  Specifically, they advised Ms. Taylor by letter dated October 15, 2018 that they would not

---

[8] Ms. Taylor's property remains covered by the ashes and debris of her burned home and personal property to date because she cannot afford to clear the property on her own.

fulfill the contract they made with her, nor would they pay any of the other benefits under the Policy which they had promised her for over two months.  However, Arkansas law does not allow an insurance company to rescind coverage when the insured has timely paid its premiums without consent of the insured or a declaratory judgment when a third-party claim is at issue. *Douglass*, 913 S.W.2d at 280.  The mortgage on Ms. Taylor's property is no surprise to Lloyd's and Hiscox, as Ms. Taylor disclosed the mortgage in her insurance application and it was discussed during her examination under oath.  Lloyd's and Hiscox failed to notify the mortgagee, an innocent third-party, that it was rescinding Ms. Taylor's Policy.  As such, they blatantly ignored the law and rescinded the Policy anyway in an attempt to avoid liability under the Policy.

119.    Lloyd's and Hiscox's bad faith misconduct has severely damaged Ms. Taylor and will further damage her in the future.

### THIRD COUNTERCLAIM
**(Improper Rescission)**

120.    Ms. Taylor repeats and realleges each allegation set forth in Paragraphs 1 through 119 of these counterclaims as though fully set forth herein.

121.    Lloyd's and Hiscox improperly attempted to rescind the Policy on October 15, 2018.

122.    Lloyd's and Hiscox sent a notice of rescission of the Policy to Ms. Taylor's counsel on October 15, 2018.  Dkt. No. 1-5.  Although they claimed to have returned a portion of the premiums paid by Ms. Taylor, the funds were never returned to Ms. Taylor's bank; indeed they never left Plaintiff's bank and remain in Plaintiff's account as of this date.  To date, Ms. Taylor has not received payment in full for all premiums paid under the Policy. As such, Plaintiff's attempted rescission of the Policy is improper.

123.     Furthermore, Lloyd's and Hiscox's rescission was also improper because Arkansas law does not allow an insurance company to rescind coverage based on fraud without consent of the insured or a declaratory judgment when a third-party claim is at issue. *Id.* Here, neither happened, and a third-party claim is at issue; yet, Lloyd's and Hiscox did not have Ms. Taylor's consent, and Lloyd's and Hiscox had not received a declaratory judgment. Lloyd's and Hiscox are well aware that a third-party claim is at issue, as Ms. Taylor disclosed her mortgage on the property numerous times, and it was discussed in detail during her examination under oath.

124.     Upon information and belief, Lloyd's and Hiscox have failed to notify the mortgagee, an innocent third-party, of their "*ab initio*" rescission.

125.     As a result of Lloyd's and Hiscox's improper attempt to rescind the Policy, Ms. Taylor has incurred damages and will be further damaged in the future.

## RESERVATION OF ADDITIONAL COUNTERCLAIMS

126.     As discovery in this case has yet to commence, and as Ms. Taylor continues to investigate the allegations set forth in the Complaint, Ms. Taylor specifically gives notice that she intends to assert additional counterclaims that may become available by law, statute, or upon discovery in this case. As such, Ms. Taylor reserves the right to amend her Answer and to assert such additional counterclaims as allowed by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Western District of Arkansas upon further discovery.

## JURY DEMAND

127.     Ms. Taylor, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of all issues so triable by right.

## RELIEF REQUESTED

128.   Ms. Taylor respectfully requests the following relief:

A.   That Hiscox take nothing against Ms. Taylor by its Complaint;

B.   That the Court dismiss each and every claim related to Ms. Taylor in Hiscox's Complaint with prejudice;

C.   Ms. Taylor asks the Court to enter judgment for Ms. Taylor and enforce the Policy which remains binding on Lloyd's and Hiscox;

D.   That the Court find and enter a judgment declaring that Lloyd's and Hiscox breached their obligations under the Policy;

E.   That the Court find and enter a judgment requiring Lloyd's and Hiscox's specific performance under the Policy with Ms. Taylor;

F.   That the Court find and enter a judgment declaring that Lloyd's and Hiscox acted in bad faith in an attempt to avoid liability under the Policy, causing Ms. Taylor damages;

G.   That the Court award damages to Ms. Taylor for Lloyd's and Hiscox's breach of the Policy, including interests and costs, and any exemplary damages;

H.   That the Court award damages to Ms. Taylor for Lloyd's and Hiscox's bad faith, including interests and costs, and any exemplary damages;

I.   That the Court award Ms. Taylor attorneys' fees pursuant to Ark. Code Ann. § 16-22-308;

J.   That the Court award Ms. Taylor twelve percent (12%) damages upon the amount of Ms. Taylor's loss, together with all reasonable attorneys' fees for the prosecution and collection of the loss, pursuant to Ark. Code Ann. § 23-79-208;

K.      That the Court award Ms. Taylor any other relief the Court may deem just, equitable, and proper.

Respectfully submitted,

*/s/ Jennifer H. Doan*
Jennifer H. Doan
Arkansas Bar No. 96063
Cole A. Riddell
Arkansas Bar No. 2018051
HALTOM & DOAN
6500 Summerhill Rd., Suite 100
Texarkana, Texas 75503
Telephone (903) 255-1000
Facsimile (903) 255-0800
E-Mail: jdoan@haltomdoan.com
E-Mail: criddell@haltomdoan.com

James Wesley Christian
(Admitted *Pro Hac Vice*)
CHRISTIAN SMITH & JEWELL, LLP
2302 Fannin, Suite 500
Houston, Texas 77002
Telephone (713) 659-7617
Facsimile (713) 659-7641
E-Mail: jchristian@csj-law.com

**ATTORNEYS FOR DEFENDANT
SUZAN E. TAYLOR**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule 5.1. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this 23rd day of April, 2019.

*/s/ Jennifer H. Doan*
Jennifer H. Doan