IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

| | |
|---|---|
| HISCOX DEDICATED CORPORATE MEMBER LIMITED | PLAINTIFF/COUNTER-DEFENDANT |
| v.    NO. 6:18-CV-06100 | |
| SUZAN E. TAYLOR | DEFENDANT/COUNTER-PLAINTIFF/ THIRD-PARTY PLAINTIFF |
| v. | |
| THE SOCIETY OF LLOYD'S, THE CORPORATION AT LLOYD'S, and BURNS & WILCOX, LTD. | THIRD-PARTY DEFENDANTS |

## MEMORANDUM OPINION AND ORDER

Before the Court is a 12(b)(6) motion to dismiss and brief in support filed by Burns & Wilcox, Ltd. (ECF Nos. 90 & 91). Suzan E. Taylor has filed a response in opposition. (ECF No. 94). This matter is now ready for consideration. For the reasons that follow, the motion will be GRANTED.

### I.   Introduction

This case is an insurance coverage action. The policy at issue, Lloyd's Policy No. VSRD634943 (the Policy), provided fire insurance coverage for the high value home owned by Defendant, Counter-plaintiff, and Third-Party Plaintiff, Suzan E. Taylor, in Garland County, Arkansas. In February 2018, Taylor purchased fire insurance coverage from Certain Underwriters at Lloyd's of London (the Insurer). Under the terms of the Policy, the dwelling was

1

insured for $2.6 million and the personal property was insured for $1.3 million. Plaintiff and Counter-defendant Hiscox Dedicated Corporate Member Limited ("Hiscox") is the majority underwriter of Lloyd's Syndicate #33, the only syndicate subscribed to the Policy. Taylor's home burned to the ground on August 6, 2018 while Taylor was away visiting a sick relative. Upon learning of the loss, Taylor filed a claim under the Policy. After investigating the cause of the fire and taking Taylor's deposition, the Policy was unilaterally rescinded for alleged misrepresentations of material facts in the application. Hiscox filed the underlying lawsuit seeking declaratory relief to validate the rescission of the Policy. Taylor answered the complaint and filed a counter-claim against Hiscox (ECF No. 25). A few weeks later, Taylor filed a third-party complaint (ECF No. 26).

On January 30, 2020, Taylor filed an amended third-party complaint against these entities: Burns & Wilcox, Ltd., The Society of Lloyd's, and The Corporation at Lloyd's. (ECF No. 69). Taylor has properly served Burns & Wilcox. The Court has extended the deadline to serve the other third-party defendants. (ECF No. 97). Taylor alleges four causes of action against Burns & Wilcox: breach of contract, bad faith, improper rescission, and negligence. On March 18, 2020, Burns & Wilcox filed a 12(b)(6) motion to dismiss and brief in support, contending that Taylor has failed to plead facts sufficient to establish her third-party claims. (ECF Nos. 90 & 91). Taylor has filed a response in opposition (ECF No. 94) arguing the motion should be denied because the amended third-party complaint does states claims upon which relief can be granted.

## II. Pleading Standard

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P.

8(a)(2). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard is satisfied if the complaint alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). When deciding the merits of a Rule 12(b)(6) motion to dismiss, the Court must accept as true all factual allegations and draw all reasonable inferences in the non-movant's favor. *See Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008); *Maki v. Allete, Inc.*, 383 F.3d 740, 742 (8th Cir. 2004). However, this tenet of law does not apply when the plaintiff pleads legal conclusions or pleads a "formulaic recitation of the elements of a cause of action." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Factual allegations need not be pleaded in great detail, but they must be sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Ordinarily, only the facts alleged are considered in ruling on a 12(b)(6) motion, but when materials are attached to the complaint, the Court may consider these materials in construing the sufficiency of the complaint. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).

### III.     Background

For purposes of considering the motion to dismiss, the facts are taken from the Amended Third-Party Complaint (ECF No. 69) and construed in a light most favorable to Taylor. On or about February 7, 2018, Taylor purchased a fire insurance policy for her home from Smith & Company, an agency in Stuttgart, Arkansas. She completed her insurance application over the

phone with one of Smith's employees, Nicky Hodges. Taylor asserts her fire insurance policy was issued by Underwriters and Lloyd's of London. (*Id.* ¶¶ 15, 34-35). Taylor also asserts the Policy was procured through Burns & Wilcox as a surplus lines broker:

> Neither Lloyd's of London nor Underwriters were licensed to issue insurance in the State of Arkansas on their own, as Underwriters were merely surplus lines insurers, so they issued the Policy to Ms. Taylor through Burns & Wilcox, a licensed surplus lines insurance broker in Arkansas. *See id.* at 7 ("This contract is registered and delivered as a surplus line coverage under the Surplus Lines Insurance law, and it may in some respects be different from contracts issued by insurers in the admitted markets, and accordingly it may, depending upon the circumstances be more or less favorable to an insured than a contract from an admitted carrier might be.").

(*Id.* ¶ 7).

On August 6, 2018, after the fire destroyed almost everything she owned, Taylor filed an insurance claim to recover her losses. While the claim was pending, Taylor spoke to insurance adjuster Brad Bettis of Minuteman Adjusters on several occasions. Bettis consistently assured Taylor she would receive payment for her damages claim, including her living accommodations the removal of the debris from her property. Bettis encouraged Taylor to lease a comparable property so the lease payments could be included in the settlement. Despite these assurances, Taylor never received payment under the Policy for the property damage or for any other related expenses. Instead, Taylor was accused of making material misrepresentations on her insurance application, and her fire insurance policy was unilaterally rescinded.

According to Taylor, the Underwriters, Lloyd's of London, and Burns & Wilcox, delayed payment of her claim by "claiming they were 'investigating' the Fire for several months." (ECF No. 69, Am. Third-Party Complaint, ¶ 23). She alleges the Underwriters, Lloyd's of London, and Burns & Wilcox, through their agents, visited the burned property "with fire inspectors and canines with hopes of finding evidence of arson." (*Id.* ¶ 24). She further alleges the

Underwriters, Lloyd's of London, and Burns & Wilcox, asked a contractor to wear a wire to get "Ms. Taylor to admit that she burned her house down or engaged in insurance fraud." (*Id.* ¶ 56).

Taylor claims she participated in a deposition at the request of the Underwriters, Lloyd's of London, and Burns & Wilcox. (*Id.* ¶ 25). After the deposition occurred, Taylor states these entities turned the attention of their investigation to Ms. Taylor's insurance application. (*Id.*). Subsequently, on October 15, 2018, Taylor received a letter from Minuteman Adjusters saying the Underwriters had discovered multiple material misrepresentations in her insurance application. (ECF No. 69-3, Ex. C). The Underwriters rescinded the Policy based on the alleged misrepresentations. Throughout various portions of the amended third-party complaint, Taylor pleads that Burns & Wilcox and Lloyd's of London rescinded the Policy in coordination with the Underwriters. (ECF No. 69, Am. Third-Party Complaint, ¶¶ 44, 58, 78).

### IV. Discussion

Taylor contends that the amended third-party complaint should not be dismissed because the pleadings are sufficient to state claims against Burns & Wilcox. Taylor alleges that Burns & Wilcox, along with the Underwriters and Lloyd's of London, wrongfully rescinded the Policy by failing to pay her claim. (*Id.* ¶¶ 39, 43-44). Taylor also alleges claims against Burns & Wilcox for bad faith and negligence.

#### A. Breach of Contract[1]

An insurance policy is a contract to which the standard provisions of contract interpretation apply. *Foster v. Farm Bureau Mut. Ins. Co.*, 71 Ark. App. 132, 133, 27 S.W.3d

---

[1] Taylor alleges two distinct causes of action for "breach of contract" and "improper rescission." First, the Court notes that rescission is an equitable, common law remedy that voids a contract *ab initio*. *See Ferrell v. Columbia Mut. Cas. Ins. Co.*, 306 Ark. 533, 537, 816 S.W.2d 593, 595 (1991). Second, Taylor's claim for improper rescission is no more than a cause of action for breach of contract under a different name, as Taylor seeks to retain the benefits of the policy, i.e., payment. Thus, the Court will evaluate Taylor's claim for improper rescission as part of her breach of contract claim.

464, 465 (2000). To state a cause of action for breach of contract, the complaint needs to only assert "the existence of an enforceable contract between the plaintiff and defendant, the obligation of the defendant thereunder, a violation by the defendant, and damages resulting to the plaintiff from the breach." *Smith v. Eisen*, 97 Ark. App. 130, 139, 245 S.W.3d 160, 168-69 (2006). In order to withstand a Rule 12(b)(6) motion, Taylor must plead facts to support each element.

When viewed in a light most favorable to Taylor, the amended third-party complaint fails to state a claim for breach of contract against Burns & Wilcox. Taylor has submitted the Policy to the Court for review.[2] In a previous order, the Court concluded the named insurer in the Policy is "Certain Underwriters at Lloyd's of London." (ECF No. 55, Order, Dec. 12, 2019). The Policy identifies Burns & Wilcox as the "Correspondent" of the Underwriters. It expressly states, "The Correspondent is not an Insurer" and shall not "be liable for any loss or claim whatsoever." (ECF No. 69-1, Policy, at 3-4). Under these terms, it is not possible for Taylor to state a claim for breach of contract or wrongful rescission against Burns & Wilcox, because Taylor cannot plead any fact demonstrating the existence of a contractual relationship. *Eisen*, 97 Ark. App. at 139, 245 S.W. at 168-69 (stating that a claim for breach of contract must "assert the existence of an enforceable contract between the plaintiff and the defendant."). Accordingly, Taylor's cause of action for breach of contract against Burns & Wilcox should be dismissed with prejudice. *See Mountain Home Flight Serv., Inc. v. Baxter Cty., Ark.*, No. 3:12-CV-03027, 2012 WL 2339722, at *4 (W.D. Ark. June 19, 2012), *aff'd*, 758 F.3d 1038 (8th Cir. 2014) (dismissing breach of contract claim with prejudice when plaintiff failed to allege a specific basis for the claim).

---

[2] While a court cannot ordinarily consider materials outside of the pleadings when deciding a 12(b)(6) motion to dismiss, it can consider "materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

Regarding rescission, Taylor suggests that the unilateral rescission of the Policy was improper because she had a mortgage on her property. She asserts that:

> 66. Furthermore, Underwriters', Lloyd's of London's, and Burns & Wilcox's rescission was also improper because Arkansas law does not allow an insurance company to rescind coverage based on fraud without consent of the insured or a declaratory judgment when a third-party mortgage is at issue, as it is here. *Douglass*, 913 S.W.2d at 282. Here, neither happened, and a third-party claim is at issue; yet, Underwriters did not have Ms. Taylor's consent, and Underwriters had not received a declaratory judgment. Underwriters are well aware that a third-party claim is at issue, as Ms. Taylor disclosed her mortgage on the property numerous times, and it was discussed in detail during her examination under oath.
>
> 67. Upon information and belief, Underwriters, Lloyd's of London, and Burns & Wilcox have failed to notify the mortgagee, an innocent third-party, of their "*ab initio*" rescission.
>
> 68. As a result of Underwriters', Lloyd's of London's, and Burns & Wilcox's improper attempt to rescind the Policy, Ms. Taylor has incurred damages and will be further damaged in the future.

(ECF No. 69, Am. Third-Party Complaint).

In Arkansas it is well established that unilateral rescission is not available as a remedy "when third-party claims are at issue." *Douglass v. Nationwide Mut. Ins. Co.*, 323 Ark. 105, 913 S.W.2d 277, 282 (1996). Assuming without deciding the existence of a third-party claim in this case, that fact is irrelevant to showing the existence of a contractual relationship between Taylor and Burns & Wilcox. Taylor cannot state a claim for wrongful rescission against this defendant without first alleging the existence of an underlying contract with this defendant. Thus, the wrongful rescission claim should be dismissed with prejudice.

### B. Bad Faith

Taylor claims bad faith against Burns & Wilcox. "In order to state a claim for bad faith, one must allege that the defendant insurance company engaged in affirmative misconduct that

7

was dishonest, malicious, or oppressive." *Unum Life Ins. Co. of Am. v. Edwards*, 362 Ark. 624, 627–28, 210 S.W.3d 84, 87 (2005) (citing *State Auto Prop. & Cas. Ins. Co. v. Swaim,* 338 Ark. 49, 991 S.W.2d 555 (1999).

As discussed above, Taylor offers inadequate factual allegations to plead that she entered an insurance contract with Burns & Wilcox. Taylor presents limited authority to suggest she can assert a bad faith claim against a non-insurer. (ECF No. 94, Br. in Opp'n, at 13) (citing *Advanced Ins. Brokerage of Am., Inc. v. Mut. Marine Office, Inc.*, No. 4:13-CV-00532, 2013 WL 11374519, at *1 (E.D. Ark. Oct. 30, 2013)). However, Taylor does not cite binding authority recognizing bad faith as a cause of action that can be asserted against a party that is not her insurer. It would not be proper for this Court to expand the tort of bad faith in this manner. Federal courts cannot "expand state law in ways not foreshadowed by state law precedent." *Ashley County, Ark. v. Pfizer*, *Inc.*, 552 F.3d 659, 673 (8th Cir. 2009). A review of Arkansas precedent does not support the proposition that bad faith can be asserted against a non-insurer. This Court does not foreshadow such an expansion. Accordingly, Taylor cannot state a claim for bad faith against Burns & Wilcox, and the claim should be dismissed with prejudice.

### C.  Negligence

Finally, Taylor asserts a cause of action for negligence. To recover for negligence, a plaintiff must show that a defendant owed a legal duty to the plaintiff. *See Marlar v. Daniel*, 368 Ark. 505, 508, 247 S.W.3d 473, 476 (2007). Thus, to properly state a negligence claim, it is necessary to plead sufficient facts for the Court to reasonably infer that Burns & Wilcox owed a duty to Taylor. Taylor alleges the following regarding her negligence claim:

> 72. Upon information and belief, Burns & Wilcox, a surplus lines agency licensed to do business in Arkansas, procured insurance from Underwriters

and Lloyd's of London for Ms. Taylor's Policy and acted as a surplus lines insurance broker for Lloyd's of London and Underwriters. Neither Underwriters nor Lloyd's of London is licensed to issue insurance policies on its own in Arkansas, they may only issue insurance through a licensed surplus lines agency like Burns & Wilcox.

73. Because Underwriters and Lloyd's of London are not licensed insurers in Arkansas, their issuance of Ms. Taylor's Policy was only made possible by Burns & Wilcox's procurement of surplus lines insurance.

74. As a surplus lines insurance broker, Burns & Wilcox owes duties to the insureds that Burns & Wilcox procures insurance for.

75. Burns & Wilcox breached its duties to their insured, Ms. Taylor, by procuring all insurance from surplus lines insurers Lloyd's of London and Underwriters. Specifically, Burns & Wilcox failed in its regulated role as a licensed surplus lines agency by procuring all insurance for the Policy from Lloyd's and Underwriters and allowing them to issue insurance in Arkansas and injure Ms. Taylor.

76. The Policy indicates that Underwriters or Lloyd's has provided 100% of the insurance on Ms. Taylor's policy. *See* Exhibit A at 7-8. For surplus lines to be procured from unauthorized insurers, the full amount of insurance required cannot be procurable, after diligent effort has been made, from among authorized insurers who are actually marketing that kind or class of insurance in Arkansas, and the amount of insurance placed in an unauthorized insurer can only be the balance over the amount procurable from authorized insurers. Ark. Code Ann. § 23-65-305(a)(2). "Authorized insurer" means an insurance company licensed to transact business under Arkansas Code Title 23, Subtitle 3—Underwriters does not meet this definition.

77. On information and belief, Burns & Wilcox, an authorized insurance producer in Arkansas, did not abide by this statute. Burns & Wilcox did not make a diligent effort to procure insurance from authorized insurers in Arkansas before procuring 100% of the surplus lines coverage from Underwriters or Lloyd's. This is a breach of their duties as an authorized surplus lines agent in Arkansas which caused injury to Ms. Taylor.

(ECF No. 69, Am. Third-Party Complaint).

Assuming the pleadings are true, Taylor's claim for negligence fails because she does not plead what duty, if any, was owed to her by Burns & Wilcox. "In order to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the

9

defendant breached that duty, and that the breach was the proximate cause of the plaintiff's damages." *Hadder v. Heritage Hill Manor, Inc.*, 2016 Ark. App. 303, 8, 495 S.W.3d 628, 633 (2016). "Duty is a concept that arises out of the recognition that the relationship between individuals may impose on one a legal obligation for the other." *Id.* The question of whether a duty is owed is always a question of law and never one for the jury. *Kowalski v. Rose Drugs of Dardanelle, Inc.,* 2011 Ark. 44, 378 S.W.3d 109.

As a surplus lines broker, Burns & Wilcox had no duty under Arkansas law to procure insurance for Taylor. In Arkansas, surplus lines insurance may be purchased from a foreign insurer, provided that the transaction proceeds through a licensed surplus lines broker. *See* Ark. Code Ann. § 23-65-305. The statutory scheme for surplus lines insurance is regulatory in nature and provides the Insurance Commissioner with the authority to regulate licensing and enforce compliance with the Arkansas Insurance Code. It does not create a private right of action.[3] Furthermore, this is not a situation where a duty arises from a principal-agent relationship or from a special relationship. Taylor procured the Policy through Smith & Company. Her pleadings, and the Policy itself, establish that Burns & Wilcox acted as an agent of the Insurer. (ECF No. 69, Am. Third-Party Complaint, ¶¶ 7, 72). Taylor does not plead facts suggesting that she had any dealings with Burns & Wilcox as she purchased the Policy. Thus, her negligence claim should be dismissed because there is no factual or legal basis under which Burns & Wilcox owes a private duty to Taylor.

---

[3] Violating a statute enforceable by the Insurance Commissioner is punishable by a fine and may lead to the suspension, revocation, or nonrenewal of a license or certificate of authority. *See* Ark. Code Ann. 23-60-108.

## V. Order

IT IS THEREFORE ORDERED that Burns & Wilcox's 12(b)(6) motion to dismiss (ECF No. 90) should be and hereby is GRANTED in its entirety. Taylor's claims against Burns & Wilcox are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED this 20th day of April, 2020.

*/s/ Robert T. Dawson*
**ROBERT T. DAWSON**
**SENIOR U.S. DISTRICT JUDGE**