IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

HISCOX DEDICATED CORPORATE                                    PLAINTIFF
MEMBER LIMITED

v.                                    Case No. 6:18-cv-6100

SUZAN E. TAYLOR                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

Before the Court is the prior Order Denying Motions for Summary Judgment (ECF No. 151), issued by the Court upon remand from the Eighth Circuit.[1]  Apart from an issue addressed and reversed by the Eighth Circuit, that order evaluated Plaintiff Hiscox Dedicated Corporate Member Limited's ("Hiscox") Motion for Summary Judgment (ECF No. 129) and Defendant Suzan E. Taylor's ("Taylor") Motions for Partial Summary Judgment (ECF Nos. 124 & 127).  The Court finds that the conclusions reached by the Court in ruling on those motions must be reevaluated.[2]

## I. BACKGROUND

Plaintiff Hiscox is a United Kingdom insurance corporation with its principal place of Business in London, England.  Hiscox provides capital to Hiscox Syndicate 33, an underwriting syndicate within the Lloyd's of London insurance marketplace.  At all times relevant to this matter, Burns & Wilcox ("B&W") was a coverholder for Hiscox and given limited authority to underwrite and bind insurance risks on behalf of Hiscox.  Defendant Taylor is a citizen of Arkansas.  Prior to

---

[1] See Hiscox Dedicated Corp., Ltd. v. Taylor, 53 F.4th 437 (8th Cir. 2022).
[2] "The doctrine of law of the case is applicable only to final judgments, not to interlocutory orders. The district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." Murr Plumbing, Inc. v. Scherer Bros. Fin. Serv. Co., 48 F.3d 1066, 1070 (8th Cir. 1995) (internal citations omitted); see also In re Energy Future Holdings Corp., 904 F.3d 298, 307 (3rd Cir. 2018) (noting that any federal court has inherent authority to reconsider prior interlocutory orders so long as the court retains jurisdiction over the case).

the events giving rise to this litigation, B&W had issued insurance policies to Taylor on behalf of Hiscox and other insurance companies.

In early 2018, Taylor sought an insurance policy providing coverage for her home at 654 Springwood Road, Hot Springs National Park, Arkansas ("Hot Springs Property"). Through insurance agent Nicky Hodges ("Hodges"), Taylor filled out an industry standard ACORD form to apply for a policy. Taylor provided answers to the application questions to Hodges over the phone. The questions on the application relevant to this matter were: 1) "Has applicant had a foreclosure, repossession, bankruptcy or filed for bankruptcy during the past five (5) years?"; 2) "Any losses, whether or not paid by insurance, during the last 3 years, at this or any location?"; 3) "Has any coverage been declined, cancelled or non-renewed during the last three (3) years?"; and 4) "Has applicant had a judgment or lien during the past five (5) years?" ECF No. 1-2, p. 5-6 (capitalization altered). Taylor indicated "No" for every question except for the ones regarding non-renewals of policies and losses. Explaining her "Yes" answer for the losses question, Taylor stated she had a "Brush or Brush & Grass Mixture Fire" on November 20, 2017. *Id*. at p. 5. For the "Yes" answer to the non-renewal question, she stated that "Builders Risk policy with American Zurich is nonrenewing on 02/15/2018." *Id*. at p. 6.

On February 6, 2018, Hodges returned the completed application to Taylor with an insurance quote received from B&W for a policy covering the Hot Springs Property. Hodges directed Taylor to confirm the accuracy of the recorded answers. Taylor later signed the completed application via DocuSign email on February 7, 2018. On the last page of the application, above the signature line, is an "applicant's statement" that reads: "I have read the above application and any attachments. I declare that the information provided in them is true, complete and correct to

2

the best of my knowledge and belief. This information is being offered to the company as an inducement to issue the policy for which I am applying." *Id.* at p. 9 (capitalization altered).

B&W subsequently issued Taylor the Homeowner's Policy No. VSRD 634943 ("Policy") covering the Hot Springs Property, with an effective period from February 8, 2018 to February 9, 2019. ECF No. 1-1. The Policy provided dwelling coverage up to $2,600,000, personal property coverage up to $1,300,000, and loss of use/rents coverage up to $260,000. *Id.* at p. 10. Through its participation in Hiscox Syndicate 33, Hiscox was a subscriber and insurer for the Policy issued to Taylor for the Hot Springs Property.[3] *Id.* at p. 13. The Policy contained a "Concealment Or Fraud" section, which stated: "We provide coverage to no 'insureds' under this policy if, whether before or after a loss, an 'insured' has: 1. Intentionally concealed or misrepresented any material fact or circumstance; 2. Engaged in fraudulent conduct; or 3. Made false statements; relating to this insurance." *Id.* at p. 15-16.

Taylor's Hot Springs Property was completely destroyed in a fire on August 6, 2018. Hiscox subsequently initiated an investigation into the cause of the fire. The investigation of the cause of the fire was ultimately inconclusive. Hiscox also began investigating whether Taylor's application for the Policy contained potential misrepresentations. Upon determining that Taylor's application for the Policy contained multiple material misrepresentations, Hiscox directed that the Policy be rescinded on October 15, 2018. That same day, Taylor was issued a notice stating that the Policy was rescinded *ab initio* because of certain material misrepresentations in her application for the Policy. The notice further stated that even if the Policy was not rescinded, any claim under the Policy would be denied because of the Policy's Concealment Or Fraud section. A check for

---

[3] Hiscox is the managing agent for Hiscox Syndicate 33 and is responsible for 100% of any loss coverage for insurance policies to which Hiscox Syndicate 33 subscribes. ECF No. 130-1, pp. 5, 8. Though other members of Hiscox Syndicate 33 are not parties in this matter, they are bound by any judgment against Hiscox. ECF No. 1-1, p. 22.

the premium amount Taylor paid for the Policy was subsequently returned to her. Taylor's attorney mailed back the returned premium, asserting that they believed the Policy was improperly rescinded.

Hiscox filed the instant action in this Court on October 15, 2018.[4] ECF No. 1. Pursuant to 28 U.S.C.A. §§ 2201 and 2202, Hiscox seeks a declaratory judgment finding that it had properly rescinded the Policy and has no duty to pay any losses. Hiscox alleges that six material misrepresentations made by Taylor in applying for the Policy permitted Hiscox to rescind the Policy. The alleged misrepresentations on the application include: failing to disclose that foreclosure proceedings had started against the Hot Springs Property in 2018, failing to disclose the 2016 foreclosure and sale of Taylor's property in Fairfield Bay, Arkansas ("Fairfield Bay Property"), failing to disclose a 2016 theft loss at the Hot Springs Property, failing to disclose the non-renewal of a previous coverage policy for the Hot Springs Property, failing to disclose an outstanding judgment against her in favor of Deere Credit, Inc., and failing to disclose that the Hot Springs Property was for sale. Alternatively, Hiscox seeks a declaration that the Policy does not provide coverage for the loss pursuant to the Concealment Or Fraud section of the Policy.[5]

Taylor's Answer brought counterclaims against Hiscox for breach of contract, the tort of bad faith, and improper rescission.[6] ECF No. 26, p. 14-21. Regarding the breach of contract claim, Taylor alleged that the fire loss at the Hot Springs Property was explicitly covered under the Policy and that Hiscox breached its obligation to reimburse Taylor for the loss. Taylor's claim of bad faith alleges that Hiscox knew that the Policy provided coverage for the loss and maliciously

---

[4] The Court has jurisdiction over this matter pursuant to 18 U.S.C. §1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

[5] This matter was reassigned to the Honorable Robert T. Dawson on January 18, 2019. ECF No. 20.

[6] Taylor also filed a Third-Party Complaint (ECF No. 26), but subsequent rulings dismissed any claims she made against third parties (ECF Nos. 55 & 98). Taylor's only remaining claims are the three counterclaims against Hiscox.

sought an unfounded excuse to not pay her what she was owed under the Policy.  Taylor's third claim alleges that Hiscox did not properly rescind the Policy.

Hiscox moved for summary judgment in its entirety.  ECF Nos. 129, 131, & 132.  With the exception of the alleged misrepresentation regarding whether the Hot Springs Property was for sale, Hiscox sought summary judgement regarding every misrepresentation it alleged in its complaint.  Hiscox argues that the factual record shows that there is no genuine dispute that Taylor made five clear misrepresentations in her application for the Policy.   Hiscox further argues that the factual record shows that there is no genuine dispute that those misrepresentations were material because B&W would not have issued the Policy at all or would have issued the Policy on different terms if those misrepresentations were not made.   Thus, Hiscox concludes that it is entitled to summary judgment finding that it properly rescinded the policy under Arkansas law. Hiscox also argues that its alternate theory of relief must prevail because Taylor indisputably made a false statement in her application, which would preclude any coverage under the Concealment Or Fraud section of the Policy.  Lastly, Hiscox argues that summary judgment should also be granted against Taylor's counterclaims because a finding that Hiscox properly rescinded the Policy precludes any possibility of success for those claims.

Taylor filed two separate motions for partial summary judgment.  Taylor's first motion for partial summary judgment addressed the misrepresentation Hiscox alleges she made in not disclosing that she had a foreclosure at the Hot Springs Property.  ECF Nos. 124, 125, & 126. Taylor argues that the application question regarding foreclosures in the last five years was legally ambiguous for the Hot Springs Property because it could reasonably be read to mean either the initiation of foreclosure proceedings or the ultimate sale of the foreclosed property, only one of which would apply to the Hot Springs Property.  Taylor concludes that this ambiguity must be

construed in her favor and that she is entitled to summary judgment finding that she did not make a misrepresentation.  Taylor's second motion for partial summary judgment seeks a finding that B&W was a general agent of Hiscox.  ECF Nos. 127, 128, & 130.  Taylor argues that the factual record indicates there is no genuine dispute that B&W was a general agent for Hiscox and therefore all of B&W's knowledge is legally imputed to Hiscox.

The Court initially granted Hiscox's motion for summary judgment, denied Taylor's motions for partial summary judgment, and dismissed Taylor's counterclaims with prejudice.  ECF Nos. 144 & 145.  The Court determined that there was no genuine dispute that Taylor had made a misrepresentation in her application by not disclosing that foreclosure proceedings had started at the Hot Springs Property in early 2018.  The Court found that the word "foreclosure" was not ambiguous and clearly meant the initiation of foreclosure proceedings.  The Court briefly mentioned the remaining misrepresentations Hiscox alleges that Taylor made in her application, but did not further analyze those alleged misrepresentations and whether they would also permit rescission of the Policy.  The Court did not address Taylor's arguments regarding B&W being a general agent of Hiscox and any knowledge that may be imputed to Hiscox.

The Eighth Circuit reversed and remanded the Court's initial order on the parties' motions for summary judgment on December 14, 2022.[7]  ECF No. 150; *Hiscox Dedicated Corp., Ltd. v. Taylor*, 53 F.4th 437 (8th Cir. 2022).  The Eighth Circuit found that the word "foreclosure" was ambiguous when applied to the alleged misrepresentation at the Hot Springs Property.  *Hiscox*, 53 F.4th at 439-42.  The Eighth Circuit determined that foreclosure could reasonably be read to indicate the initiation of foreclosure proceedings or the ultimate foreclosure sale of a property.  *Id*. Thus, Arkansas law mandated that the reading favorable to Taylor in which foreclosure meant the

---

[7] Though their opinion was issued in November 2022, the Mandate from the Eighth Circuit in this matter did not come down until December 14, 2022.

ultimate sale of the foreclosed property must prevail.  *Id*.  Therefore, the Eighth Circuit concluded that Taylor's answer regarding the Hot Springs Property was not a misrepresentation "in the circumstances" permitting rescission because only foreclosure proceedings had started against the Hot Springs Property.  *Id*. at 442.  The Eighth Circuit noted that the other arguments put forth in Hiscox's motion for summary judgment were not addressed by the Court's initial order, but left those matters for the Court to address upon remand.  *Id*.

The Court issued its order upon remand on December 21, 2022, which denied all parties' motions for summary judgment.  ECF No. 151.  The Court noted the four remaining misrepresentations alleged by Hiscox but did not make a finding regarding whether any misrepresentations were made.  The Court also noted the parties' arguments regarding agency and whether knowledge of B&W could be imputed to Hiscox.  The Court determined that whatever prior knowledge B&W had was an open factual question better left to a jury.  The Court reached the same conclusion regarding whether any such knowledge was material and would have prevented B&W from issuing the Policy on behalf of Hiscox.[8]

Upon review, the Court finds that the issues addressed by the order on remand require further analysis and reevaluation.  The subject of Taylor's first Motion for Partial Summary Judgment (ECF No. 124) was addressed by the Eighth Circuit.  Accordingly, the Court's review will address only Hiscox's Motion for Summary Judgement (ECF No. 129) and Taylor's second Motion for Partial Summary Judgment (ECF No. 127).

## II. LEGAL STANDARD

### A. Summary Judgment

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as

---

[8] After the order on remand, and upon the retirement of the Honorable Robert T. Dawson, this matter was reassigned to the undersigned on January 4, 2023.

to any material fact and the movant is entitled to judgment as a matter of law." *Hess v. Union Pac. R.R. Co.*, 898 F.3d 852, 856 (8th Cir. 2018) (citation omitted).   Summary judgment is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   A fact is material only when its resolution affects the outcome of the case. *See id.* at 248.   A dispute is genuine if the evidence is such that it could cause a reasonable fact finder to return a verdict for either party. *See id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in the light most favorable to the nonmoving party. *See Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006).   The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).   The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *See Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995).   However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.   A party that fails to respond to any basis of a motion for summary judgment effectively waives any argument in opposition to that aspect of a motion for summary judgment. *See Department of Labor v. EJ's Cleaning Services, Inc.*, 2020 WL 1432048 at *1 (E.D. Ark. March 19, 2020) (citing *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009)).

### B. Applicable Law

A federal court sitting in diversity generally applies the law of the forum state. *See Pals v. Weekly*, 12 F.4th 878, 881 (8th Cir. 2021). Arkansas is the forum state and the parties' arguments apply Arkansas law. Accordingly, the Court will apply Arkansas law to the parties' claims.

### III. DISCUSSION

The Court will first address the agency arguments presented by Taylor's partial motion for summary judgment. The core contention of that motion is that B&W had knowledge of the misrepresentations that Hiscox now cites as justifications for rescinding the Policy. Taylor contends that this knowledge was imputed to Hiscox and that Hiscox cannot legally rescind the Policy because of information it already possessed. Therefore, the Court finds it necessary to analyze the agency issue first. Then, if appropriate, the Court will apply any findings regarding the agency issue to the arguments in Hiscox's motion for summary judgment regarding alleged misrepresentations in Taylor's application.

### A. Agency and Imputed Knowledge

Taylor argues that there is no genuine dispute that B&W acted as a general agent for Hiscox at all times relevant to this matter. ECF No. 130, p. 6-11. Taylor notes that there is plentiful evidence in the record showing that Hiscox chose B&W to act as its coverholder and agent for issuing insurance in Arkansas. Taylor then contends that the authority granted to B&W to issue and renew insurance policies on behalf of Hiscox and bind Hiscox to insurance risks indicates that there is no genuine dispute that B&W was a general agent for Hiscox. Taylor further contends that B&W's indisputable status as a general agent imputes all its knowledge to Hiscox as a matter of law. Taylor concludes that the Court should find as a matter of law that any knowledge B&W is found to have gained during its past dealings with Taylor will be imputed to Hiscox.

9

In response, Hiscox does not directly address Taylor's arguments regarding B&W's status as a general agent and whether its knowledge could be imputed to Hiscox.  ECF No. 130, p. 8-12. Instead, Hiscox cites certain principles of law holding that an insurer is under no obligation to independently investigate and verify the accuracy of answers given on an application for insurance coverage.  Hiscox argues that whatever knowledge B&W may have gained in past dealings with Taylor is irrelevant in light of an insurer's right to accept as true the statements made on an insurance application.  Hiscox briefly attempts to dispute the assertion that B&W acted as its general agent, asserting that it was a "limited agent" subject to certain policies controlling its discretion in issuing insurance on Hiscox's behalf.

In reply, Taylor contends that Hiscox failed to substantively refute any of her arguments regarding B&W's status as Hiscox's general agent.  ECF No. 143, p. 2-9.  Taylor emphasizes that Hiscox does not dispute that B&W could issue insurance on its behalf, which is authority only possessed by a general agent for an insurer.  Taylor then contends that Hiscox does not dispute that the factual record indisputably shows that B&W gained knowledge relevant to the alleged misrepresentations in past dealings with Taylor.  Thus, Taylor concludes that B&W's knowledge of facts relevant to the alleged misrepresentations must be imputed to Hiscox.

The parties do not dispute that B&W was an agent of Hiscox and they do not dispute what actions B&W was authorized to take on behalf of Hiscox.  The only apparent dispute is whether B&W was a general agent and if B&W's knowledge can be imputed to Hiscox.

"[T]he two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal and (2) that the agent act on the principal's behalf and be subject to the principal's control." *Pledger v. Troll Book Clubs, Inc.*, 871 S.W.2d 389, 392 (Ark. 1994) (citation omitted).  If the existence of an agency relationship is in dispute, agency is a question of

10

fact. *Reed v. Smith Steele, Inc.*, 78 S.W.3d 118, 122 (Ark. Ct. App. 2002). "The burden of proving

an agency relationship lies with the party asserting its existence." *Pledger*, 871 S.W.2d at 392.

Whether an agent was acting within the scope of their authority for the principal is also a question

of fact. *See Rowland v. Gastroenterology Assoc., P.A.*, 657 S.W.2d 536, 538 (Ark. 1983) (citation

omitted). However, agency issues can become questions of law when "only one inference can

reasonably be drawn" from the undisputed facts. *Dodds v. Hanover Ins. Co.*, 880 S.W.2d 311, 313

(Ark. 1994) (citation omitted).

Knowledge of an agent is considered knowledge of the principal if the agent acquires that

knowledge when acting within the scope of their agency relationship for the principal. *See Hill v.

State*, 487 S.W.2d 624, 631 (Ark. 1972) (citations omitted). Knowledge that comes to an agent

when they are not acting within the scope of their agency for a principal is not imputed to that

principal. *See id*. Arkansas law makes a distinction regarding agents of insurers and bars the

imputation of knowledge between some insurance agents and the insurer. *See Dodds*, 880 S.W.2d

at 314-15. The two categories of agents for an insurer are "soliciting agents" and "general agents,"

with the difference between the two summarized as follows:

> A general agent is ordinarily authorized to accept risks, to agree upon the terms of insurance
> contracts, to issue and renew policies, and to change or modify the terms of existing
> contracts. A soliciting agent is ordinarily authorized to sell insurance, to receive
> applications and forward them to the company or its general agent, to deliver policies when
> issued and to collect premiums. In addition, a soliciting agent has no authority to agree
> upon the terms of the policies or to change or waive those terms, nor can his knowledge be
> imputed to the company he represents.

*See id*. (internal citations omitted).

The Court finds that there is no genuine dispute that B&W was a general agent for Hiscox.

The undisputed evidence in the record clearly shows that B&W was authorized to take actions

11

reserved for general agents, such as accepting risks[9] and renewing policies[10] on behalf of Hiscox. *See id.* at 314-15.  Hiscox does not dispute that B&W was authorized to take such actions. Hiscox's Statement of Undisputed Facts even asserts that B&W was "given limited binding authority to underwrite and bind insurance risks for the insurer."  ECF No. 131, p. 2.  Instead of contesting the factual record, Hiscox makes a dubious legal argument by throwing out the phrase "limited agent" to describe B&W because its authority was not totally unfettered.  That phrase does not reflect any of the recognized distinctions for agents of insurers under Arkansas law. Whatever limitations were placed on B&W's discretion, it does not change that the uncontested facts show that the only reasonable conclusion is that the actions Hiscox authorized B&W to take on its behalf were clearly those of a general agent and not a soliciting agent.  Therefore, the barrier between a soliciting agent's knowledge and an insurer is not present in B&W and Hiscox's agency relationship.  *See Dodds*, 880 S.W.2d at 315.

However, B&W's status as a general agent for Hiscox does not necessarily mean that all of B&W's knowledge is imputed to Hiscox.  Taylor seems to suggest so in her motion, but that is incorrect under Arkansas law.  Arkansas law is clear that only the knowledge B&W gained while acting within the scope of its agency relationship for Hiscox will be imputed to Hiscox.  *See Hill*, 487 S.W.2d at 631.[11]  There is no indication that Arkansas law exempts general agents for insurers from this fundamental tenet of agency law.  Whether B&W was acting within the scope of its agency relationship with Hiscox when it gained certain knowledge is a question of fact.  *See*

---

[9] Undisputed deposition testimony of Hiscox and B&W personnel clearly indicates that B&W had the authority to issue insurance policies on behalf of Hiscox.  *See* ECF No. 130-1, pp. 3, 8-9; ECF No. 130-2, pp.6-7, 10, ECF No. 130-3, p. 7-8.

[10] Undisputed deposition testimony of B&W personnel shows that B&W had the authority to renew policies on behalf of Hiscox and did so multiple times for a prior policy issued to Taylor.  *See* ECF No. 130-3, p. 12-15.

[11] This rule is strong enough that an individual member of a corporation's board of directors, who is clearly understood to be an agent of the corporation, cannot impute their personal knowledge to the corporation unless they gained that knowledge when acting "officially as a member of the board in the business of the corporation[.]"  *Hill*, 253 Ark. at 522.

*Rowland*, 657 S.W.2d 538.  The Court will examine any questions of fact regarding B&W's knowledge and whether it gained that knowledge while acting as an agent for Hiscox when addressing Hiscox's summary judgment arguments for rescission below.

### B. Grounds for Rescission of the Policy

Hiscox's motion for summary judgment generally argues that there are multiple indisputable misrepresentations in Taylor's application for the Policy that permit it to rescind the Policy.  The Court will first outline the law relevant to the parties' arguments regarding rescission and then apply it to each alleged misrepresentation Hiscox cites as a ground for rescinding the Policy.

Arkansas law is "well settled" regarding the construction and interpretation of insurance contracts:

> If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction.  On the other hand, if the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer.  Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation.  Ordinarily, the question of whether the language of an insurance policy is ambiguous is one of law to be resolved by the court.

*Elam v. First Unum Life Ins. Co.*, 57 S.W.3d 165, 169 (Ark. 2001) (internal citations omitted).  If the language is susceptible to multiple interpretations, "one favorable to the insured and the other favorable to the insurer, the one favorable to the insured will be adopted."  *Nationwide Mut. Ins. Co. v. Worthey*, 861 S.W.2d 307, 310 (Ark. 1993).  The rule of resolving ambiguity and reasonable doubts in favor of the insured against the insurer also applies to applications for insurance.  *See Phelps v. U.S. Life Credit Life Ins. Co.*, 336 Ark. 257, 262 (Ark. 1999) (citations omitted).

"In the absence of a statutory provision to the contrary, Arkansas follows the general common-law rule that a material misrepresentation made on an application for an insurance policy

and relied on by the insurance company will void the policy." *Caldwell v. Columbia Mut. Ins. Co.*, 2015 Ark. App. 719, at 3, 2015 WL 9173676, at *2; *and see Farr v. Am. Nat'l Prop. and Cas. Co.*, 2015 Ark. App. 534, at 6, 472 S.W.3d 137, 141; *see also Nationwide Mut. Fire Ins. Co. v. Citizens Bank & Trust Co.*, 2014 Ark. 20, at 4, 431 S.W.3d 292, 295 (noting that a properly rescinded policy is void *ab initio* and considered null from the outset).  "A misrepresentation is a statement of fact that is untrue or a failure to disclose a fact in response to a specific question." *Shipley v. Ark. Blue Cross and Blue Shield*, 333 F.3d 898, 904 (8th Cir. 2003).  A misrepresentation is material if the insurer meets its burden of showing that if it had known the truth of the misrepresentation "the circumstances were such that it would not have issued the present coverage."  *Brooks v. Town & Country, Mut. Ins. Co.*, 741 S.W.2d 264, 265 (Ark. 1987). Materiality "is a question of fact so long as the matter is debatable" and is a question of law "only when it is so obvious that a contrary inference is not permissible." *Burnett v. Phila. Life Ins. Co.*, 101 S.W.3d 843, 848 (Ark. Ct. App. 2003).  Uncontradicted testimony from underwriters of the materiality of a misrepresentation can be conclusive for the issue of materiality.  *See Morgan v. S. Farm Bureau Cas. Ins. Co.*, 200 S.W.3d 469, 472 (Ark. App. 2004).  A material misrepresentation in an application does not have to be related to a loss sustained to permit rescission after the loss. *See S. Farm Bureau Life Ins. Co. v. Cowger*, 748 S.W.2d 332, 336 (Ark. 1988).   The misrepresentation does not need to be intentional to permit rescission.  *See McQuay v. Ark. Blue Cross and Blue Shield*, 98 S.W.3d 454, 458 (Ark. Ct. App. 2003) (citing *Life & Cas. Ins. Co. of Tenn. v. Smith*, 436 S.W.2d 97, 99 (Ark. 1969)).

An insurer can potentially waive its rights under an insurance contract or be estopped from insisting upon those rights.  *See Cont'l Ins. Companies v. Stanley*, 569 S.W.2d 653, 656-57 (Ark.

1978).  An insurer can be estopped from asserting its rights under a contract because of its prior

knowledge:

> Where the insurer, at the time of the issuance of a policy of insurance, has knowledge of
> existing facts which, if insisted upon, would invalidate the contract from its very inception,
> such knowledge constitutes a waiver of conditions in the contract inconsistent with the
> known facts, and the insurer is estopped thereafter from asserting the breach of such
> conditions.

*Am. Nat. Ins. Co. v. Hale*, 291 S.W. 82, 83 (Ark. 1927) (quotation omitted).  Stated more

succinctly, "[t]he issue of a policy by an insurance company, with a full knowledge or notice of

all the facts affecting its validity, is tantamount to an assertion that the policy is valid at the time

of its delivery." *Id*. (quotation omitted).  "Waiver of a policy requirement or estoppel to rely upon

it may be based upon conduct of an insurance company, which must necessarily act through its

agent." *Stanley*, 569 S.W.2d at 657.

An insurer cannot void a policy based on circumstances or misstatements that it had

knowledge of, either directly or imputed to the insurer through its agent acting within the scope of

their authority, at the time the policy was applied for and issued.  *See Caldwell*, 2015 Ark App.

719, at 4 (recognizing that an insurer could waive its ability to rescind a policy based upon a

misrepresentation in an insurance application if it had knowledge of that misrepresentation when

the policy was issued); *S. Nat. Ins. Co. v. Heggie*, 174 S.W.2d 931, 932-35 (Ark. 1943) (finding

that an insurer could not void a policy if its agent was found to have possessed knowledge of the

physical condition the insurer now states was withheld from it on an application for a life insurance

policy); *Hale*, 172 Ark. at 81-84 (holding that it was proper to instruct the jury that an insurer could

not defend itself by citing false statements in an insurance application when the truth of the matter

was known by the insurer's agent when the insured applied); *Am. Ins. Co. v. Mordic*, 271 S.W.

460, 460-61 (Ark. 1925) (holding that an insurer waives certain provisions in the policy voiding

coverage if it is found that the insurer or the insurer's agent knew of the circumstances voiding coverage when the policy was applied for and issued). However, estoppel cannot be based solely on an insurer agent's knowledge of an insured's circumstances obtained while working as an agent for a third-party insurer. S*ee Stanley*, 569 S.W.2d at 657 ("We know of no authority for basing such a waiver or estoppel upon the actions of another insurance company or on the actions of an agent while representing another company[.]").

### 1. Foreclosure at Fairfield Bay Property

Foreclosure proceedings started against Taylor's Fairfield Bay Property in 2014. ECF No. 131-31. That property was eventually sold in a foreclosure sale in February 2016. ECF No. 131-21, p. 9-11.

Hiscox argues that Taylor made a material misrepresentation when applying for the Policy by failing to disclose the foreclosure of her Fairfield Bay Property. ECF No. 132, p. 16-18. Hiscox first notes that the foreclosure proceedings started against the Fairfield Bay Property in 2014 and that the ultimate foreclosure sale occurred in 2016, which is clearly within the five-year period specified by the relevant application question. Hiscox contends that any prior knowledge B&W had of this foreclosure prior to the application is irrelevant because Arkansas law entitles an insurer to rely on the answers in an application and creates no duty to independently verify the accuracy of application answers. Hiscox then contends that underwriters from B&W and Hiscox have testified that the Policy would not have been issued if Taylor disclosed the foreclosure of her Fairfield Bay Property in her application. Hiscox concludes that there is no genuine dispute that Taylor made a material misrepresentation regarding the Fairfield Bay Property foreclosure and that Hiscox is therefore entitled to rescind the Policy.

In response, Taylor argues that B&W, and thus Hiscox, had prior knowledge of the foreclosure of the Fairfield Bay Property and cannot rescind the Policy based upon that misrepresentation. ECF No. 136, p. 11-16. Taylor notes that B&W personnel were alerted by email that foreclosure proceedings were starting against the Fairfield Bay Property as early as 2014. Taylor also notes that B&W issued the insurance policy covering the Fairfield Bay Property and decided not to renew that policy in October 2014 after learning of the foreclosure proceedings. Taylor contends that B&W's knowledge of this foreclosure was imputed to Hiscox and that Hiscox is estopped from now asserting that it was not aware of any misrepresentation regarding this foreclosure. Taylor disputes Hiscox's assertion that it was entitled to rely on the application answers, arguing that Hiscox had actual knowledge of the foreclosure when it issued the Policy and did not need to conduct an investigation to discover any falsities in Taylor's answers. Taylor concludes that there is a genuine question regarding whether Hiscox had prior knowledge of the Fairfield Bay Property foreclosure, which precludes summary judgment regarding rescission. Taylor also contends that there is a genuine question regarding whether any failure to disclose this foreclosure was material. *Id*. at p. 14-15. Taylor emphasizes that B&W renewed a prior policy[12] that Taylor had with Hiscox at the Hot Springs Property after obtaining knowledge of the foreclosure at the Fairfield Bay Property. Taylor asserts that this indicates that knowledge of a prior foreclosure was not material to issuing policies and that there is a genuine question of whether non-disclosure of the Fairfield Bay Property foreclosure was material to issuing the Policy.

In reply, Hiscox reiterates its argument that an insurer is not required to investigate the accuracy of answers on an application for insurance. ECF No. 142, p. 8-9. Hiscox also argues

---

[12] This was the prior coverage policy that Taylor had for the Hot Springs Property, "SRD485085," that B&W initially issued on behalf of Hiscox in 2012 and renewed three times. ECF No. 125-5, p. 4-11. B&W declined to renew this policy in 2016. *Id*. at p. 11.

that even if B&W had knowledge of the foreclosure of the Fairfield Bay Property that knowledge could not be imputed to Hiscox. Hiscox contends that B&W was acting as an agent for a different insurer, Atrium Syndicate 609, when it issued the policy covering the Fairfield Bay Property, obtained knowledge of the start of foreclosure proceedings at that property, and declined to renew the policy at that property. Hiscox also contends that the precedent regarding rescission cited by Taylor is inapplicable because it involves a situation in which truthful answers were given to an agent for an insurer.

First, the Court finds that there is no genuine dispute that knowledge of the foreclosure at the Fairfield Bay Property was not imputed to Hiscox. As noted above, Taylor takes a mistakenly broad view of the imputation of knowledge from a general agent to an insurer. B&W must have been acting within the scope of its agency relationship with Hiscox when it learned of the foreclosure at the Fairfield Bay Property for that knowledge to be imputed to Hiscox. *See Hill*, 487 S.W.2d at 631. Taylor never alleges that B&W was acting within the scope of its agency relationship with Hiscox when it obtained any such knowledge. Further, Taylor has not pointed to anything in the record indicating that the Fairfield Bay Property foreclosure was ever disclosed, discussed, or raised as an issue at any time B&W was acting as an agent for Hiscox. The only material in the record addressing this issue strongly indicates the opposite because the policy B&W issued to Taylor for the Fairfield Bay Property was issued on behalf of an entirely different insurer, Syndicate 609.[13] ECF No. 130-6, pp. 150, 173. With the only relevant facts in the record showing that B&W was not acting as an agent for Hiscox when it obtained knowledge regarding the foreclosure at the Fairfield Bay Property, the Court finds that the only reasonable inference is that B&W was not acting within the scope of its agency relationship for Hiscox when dealing with the

---

[13] While Hiscox stated that the policy for the Fairfield Bay Property was issued on behalf of "Atrium 609," the policy simply states the insurer for the policy is "Syndicate 609." ECF No. 130-6, p. 173.

Fairfield Bay Property.  *See Dodds*, 880 S.W.2d at 313.  Therefore, knowledge of the Fairfield Bay Property foreclosure is not imputed to Hiscox.  *See Hill*, 487 S.W.2d at 631.  Accordingly, the Court finds that Hiscox cannot be estopped from rescinding the Policy based upon prior knowledge of the foreclosure at the Fairfield Bay Property.  *See Caldwell*, 2015 Ark App. 719, at 4; *Stanley*, 569 S.W.2d at 657; *Hale*, 172 Ark. at 83.

Next, the Eighth Circuit's ruling finding that the foreclosure question was ambiguous for the Hot Springs Property makes it necessary to address whether the application question regarding foreclosures was ambiguous for the Fairfield Bay Property.  The Court finds that the question was not ambiguous.  The Court emphasizes that the Eighth Circuit found that the foreclosure question was ambiguous "in the circumstances" and that Taylor's "No" answer was not a misrepresentation because only one of the two reasonable definitions of "foreclosure" applied to the Hot Springs Property.[14]  *Hiscox*, 53 F.4th at 441-42.  There is no uncertainty as to what Taylor's answer to the foreclosure question should have been regarding the Fairfield Bay Property.  Foreclosure proceedings started against the Fairfield Bay Property in 2014 and the foreclosure sale of that property occurred in 2016, all within five years of Taylor submitting her application for the Policy in February 2018.  Thus, either reasonable reading of the word "foreclosure" articulated by the Eighth Circuit would apply to the Fairfield Bay Property.  *Id*. at 440.  The only accurate answer under either reading of the question regarding foreclosures would be "Yes."  Therefore, the Court finds that there is no reasonable reading of the foreclosure question that can be "favorable to the insured" regarding the Fairfield Bay Property and that it is not ambiguous in this circumstance.[15]

---

[14] The Eighth Circuit also declined to apply its reasoning regarding the Hot Springs Property to the Fairfield Bay Property, choosing instead to leave this Court to address Hiscox's other asserted grounds for rescission on remand. *Hiscox*, 53 F.4th at 442.

[15] If two possible accurate "Yes" answers to a question permit an incorrect "No," this Court will need a higher court to declare so.

*Worthey*, 861 S.W.2d at 310.  Accordingly, the Court finds that there is no genuine dispute that Taylor made a misrepresentation when she answered "No" to the foreclosure question because a foreclosure had occurred at the Fairfield Bay Property.

Lastly, the Court finds that there is no genuine question that Taylor's misrepresentation regarding the Fairfield Bay Property was material.  There is deposition testimony from B&W and Hiscox underwriters stating that the Policy would not have been issued if Taylor had disclosed the foreclosure at the Fairfield Bay Property on her application.  ECF No. 131-2, p. 56-58; ECF No. 131-4, pp. 44-45, 57-58.  Taylor highlights nothing in the record directly contradicting that testimony.[16]  Rather, Taylor presents her erroneously broad imputed knowledge argument that the Court has rejected.  The Court determined that there is no factual basis to find that B&W was acting within the scope of its agency for Hiscox whenever it dealt with knowledge or notice of the Fairfield Bay Property foreclosure.  Therefore, the only evidence Taylor has offered to refute materiality for this misrepresentation is prior knowledge that the Court found was not imputed to Hiscox.  *See Hill*, 487 S.W.2d at 631.  With no evidence in the record refuting the underwriters' testimony that this misrepresentation was material, the Court finds that there is no genuine dispute that the non-disclosure of the Fairfield Bay Property was material to issuing the Policy.  *See Morgan*, 200 S.W.3d at 472 (holding that uncontradicted underwriter's testimony can be conclusive for materiality).

The Court finds that Taylor made a material misrepresentation when she failed to disclose the foreclosure at the Fairfield Bay Property when she applied for the Policy.  Accordingly, the

---

[16] Though not mentioned in her brief in response, the closest Taylor comes to offering contrary evidence to materiality is in her Response to Statement of Undisputed Facts.  ECF No. 137, p. 18.  Taylor notes that a B&W underwriter testified that B&W has "possibly" issued some policy on behalf of Hiscox at some time when an applicant had disclosed a prior foreclosure.  ECF No. 137-1, p. 20-21.  The Court does not find that this tepid statement on its own is sufficient to create a genuine dispute regarding materiality.

Policy is void *ab initio* and Hiscox is entitled to rescind the Policy.  *See Caldwell*, 2015 Ark. App. 719, at 3, 2015 WL 9173676, at *2; *Farr*, 2015 Ark. App. 534, at 6, 472 S.W.3d at 141; *Citizens Bank*, 2014 Ark. 20, at 4, 431 S.W.3d at 295.  Consequently, Hiscox owes no duty of coverage for the 2018 fire loss at the Hot Springs Property.

Though the Court finds that Hiscox was entitled to rescind the Policy because of this misrepresentation, the Court finds it prudent to analyze the remaining misrepresentations that Hiscox alleges Taylor made when applying for the Policy.

### 2. Deere Credit Judgment

A judgment was entered against Taylor in favor of Deere Credit, Inc. ("Deere Credit") in Harris County, Texas on January 9, 2012.  ECF No. 131-7.  This judgment was later registered in Arkansas on March 12, 2013.  ECF No. 131-8.

Hiscox argues that Taylor made a material misrepresentation in her application for the Policy by failing to disclose that she had an outstanding judgment against her.  ECF No. 132, p. 18-19.  Hiscox notes that a judgment worth $134,665.54 was entered against Taylor in favor of Deere Credit, Inc. in Texas in 2012.  Hiscox also notes that this judgment was registered in Arkansas in March 2013 and remained outstanding when Taylor applied for the Policy.  Therefore, Hiscox contends that Taylor made a clear misrepresentation when she answered "No" to the application question asking if she had a judgment "during the past five (5) years?"  Hiscox further contends that this misrepresentation was material because the Policy would not have been issued had Taylor disclosed the outstanding Deere Credit judgment in her application.  Hiscox concludes that there is no genuine dispute that Taylor made a material misrepresentation by failing to disclose this judgment and that the misrepresentation entitled it rescind the Policy.

In response, Taylor argues that she did not make a misrepresentation on the application because the question regarding judgments was ambiguous.  ECF No. 136, p. 16-17.  Taylor contends that the question regarding judgments is unclear as to whether "judgment" refers to the entry of a judgment or refers to an outstanding or pending judgment.  Taylor asserts that her "No" answer to the judgment question is correct under one of those reasonable readings, as the Deere Credit judgment was entered more than five years before she applied for the Policy.  Noting that ambiguous insurance language is to be construed against the insurer, Taylor concludes that there is a genuine question as to whether she made a misrepresentation regarding the Deere Credit judgment.  In reply, Hiscox argues that there is no ambiguity as to what "judgment" referred to and that there is no question that Taylor made a misrepresentation.  ECF No. 142, p. 11-12.

The Court finds that the application question regarding judgments is ambiguous.  There are multiple reasonable readings of what the question "has applicant had a judgment . . . in the last five (5) years?" could mean.  The word "judgment" could refer to the judgment itself and when it was entered, or it could refer to a judgment that is outstanding against the applicant.  Under the former reading, Taylor accurately answered "No" because the Deere Credit judgment was entered against her on January 9, 2012, more than five years before she submitted her application for the Policy in 2018. ECF. No. 131-7.  With Taylor answering correctly under one of the two reasonable readings, the Court finds that she did not make a misrepresentation when answering the question regarding judgments.  *See Elam,* 57 S.W.3d at 169 (noting that ambiguity is a question of law for a court to determine); *and see Worthey*, 861 S.W.2d at 310 (stating that a reasonable reading of insurance language favoring the insured must be adopted); *see also* Hiscox, 53 F.4th at 442 (holding that an insurance applicant does not make a misrepresentation if their answer is correct under one of the reasonable readings of an application question).  Therefore, Hiscox is not entitled

to rescind the Policy based on any misrepresentation Taylor made in her application regarding the Deere Credit judgment. *See Caldwell*, 2015 Ark. App. 719, at 3, 2015 WL 9173676, at *2 (a misrepresentation must occur for rescission to apply). Notwithstanding the Court's determination regarding the Fairfield Bay Property misrepresentation, Hiscox would be denied summary judgment for this misrepresentation and could not offer this alleged misrepresentation as a ground for rescission of the Policy.

### 3. 2016 Burglary Loss

Taylor's Hot Springs Property was burglarized in May 2016 and several items were stolen from the property. ECF No. 131-2; ECF No. 131-6, p. 25-30; 131-5, p. 44-46. Taylor initially submitted a claim for the loss, but she eventually withdrew the claim. ECF No. 131-22.

Hiscox argues that Taylor made a material misrepresentation in her application for the Policy by failing to disclose the 2016 burglary loss in response to the question asking if applicant had "any losses, whether or not paid by insurance, during the last 3 years at this or any location?" ECF No. 132, p. 19-20. Hiscox first asserts that any argument by Taylor regarding B&W's prior knowledge of the loss fails because B&W was legally permitted to accept the accuracy of Taylor's answers on her application. Hiscox then contends that there is nothing ambiguous about the question because "losses" clearly referred to type of loss suffered by Taylor from the burglary. Hiscox further contends that this misrepresentation was material because the Policy would not have been issued or would have been issued on different terms if the burglary loss was disclosed. Hiscox concludes that there is no genuine dispute that Taylor made a material misrepresentation regarding the 2016 burglary loss that entitles Hiscox to rescind the Policy.

In response, Taylor argues that Hiscox cannot rescind the Policy based on this alleged misrepresentation because B&W had prior knowledge of the burglary loss. ECF No. 136, p. 17-

19.   Taylor contends that the record shows that her initial claim for the 2016 burglary loss was submitted to B&W under a dwelling policy that B&W issued to her on behalf of Hiscox.  Taylor asserts that this knowledge would be imputed to Hiscox and that Hiscox would be estopped from rescinding the Policy based on an alleged misrepresentation it was aware of when Taylor applied.  Therefore, Taylor concludes that there is a genuine question regarding what knowledge Hiscox possessed when Taylor applied for the Policy that precludes summary judgment.  Taylor also argues that the question is unclear as to what constituted a "loss" and that her answer was not a misrepresentation because it was reasonable to think a withdrawn loss claim did not apply.  Hiscox does not directly address the 2016 burglary loss in its reply.  The most relevant argument Hiscox makes regarding the burglary loss is that any prior knowledge of the burglary by B&W is immaterial to rescission.  ECF No. 142, p. 8-9.

The Court finds that the application question regarding "losses" was ambiguous.  There are multiple reasonable readings of what "losses" could mean, particularly in the context of the entire question's language.  One reasonable reading is that this question refers to any type of loss that could be covered by and subject to insurance policies generally.  Conversely, the phrase "whether or not paid by insurance" could reasonably be read to narrow the meaning of "losses" to refer only to a loss in which the applicant filed an insurance claim that was ultimately paid out or denied by an insurer.  Under the latter reading, Taylor accurately answered "No" to the question because her claim was withdrawn and her insurer made no determination regarding coverage.  As the Court determined above for the question regarding judgments, Taylor's accurate answer to one of the reasonable readings precludes a finding that her answer could be a misrepresentation.  *See Elam,* 57 S.W.3d at 169; *and see Worthey*, 861 S.W.2d at 310; *see also* Hiscox, 53 F.4th at 442. Therefore, Hiscox is not entitled to rescind the Policy based on any misrepresentation Taylor made

in her application regarding "losses" in the prior three years. *See Caldwell*, 2015 Ark. App. 719, at 3, 2015 WL 9173676, at *2 (noting a misrepresentation must occur for rescission to apply). Notwithstanding the Court's determination regarding the Fairfield Bay Property misrepresentation, Hiscox would be denied summary judgment for this misrepresentation and could not offer this misrepresentation as a ground for rescission of the Policy.

Even if the question was not ambiguous, the Court finds that Hiscox's request for summary judgment on this issue would be denied because a genuine question of fact exists as to Hiscox's prior knowledge of Taylor's 2016 burglary loss. First, the Court finds that there is no genuine dispute that B&W was acting within the scope of its agency for Hiscox when it allegedly received notice of the 2016 burglary loss. The dwelling policy[17] for the Hot Springs Property at the time of the burglary was a Hiscox policy issued by B&W and renewed multiple times by B&W. ECF No. 125-5, p. 4-11; ECF No. 136-2. It is not disputed that issuing and overseeing such policies on behalf of Hiscox are clearly within the scope of B&W's agency. ECF No. 130-1, pp. 3, 8-9; ECF No. 130-2, pp. 6-7, 10, ECF No. 130-3, p. 7-8. Accordingly, the only reasonable inference that can be drawn from the record is that B&W was acting as an agent for Hiscox when managing this prior policy at the Hot Springs Property. *See Dodds*, 880 S.W.2d at 313.

Next, evidence in the record also indicates that Taylor initially submitted a claim to B&W under that policy and that B&W personnel were aware of the claim prior to Taylor withdrawing it. ECF Nos. 136-10, 136-11, 136-12. Further evidence also indicates that the initial burglary loss claim appeared in a "claims loss run" conducted by B&W in October 2016. ECF No. 136-13. This evidence creates a genuine factual question as to what knowledge and notice B&W received regarding the 2016 burglary loss while acting within the scope of its agency for Hiscox. Such

---

[17] This was Hiscox policy SRD485085R3, which was on its third renewal at the time of the burglary. ECF No. 125-5, p. 10-11; ECF No. 136-2, p. 3.

knowledge would be imputed to Hiscox through B&W acting as its general agent. *See Hill*, 487 S.W.2d at 631; *and see Dodds*, 880 S.W.2d at 314-15. If such knowledge is found to be imputed to Hiscox, then Hiscox would be estopped from rescinding the contract on grounds that it had full knowledge of the burglary loss when the Policy was issued. *See Caldwell*, 2015 Ark App. 719, at 4; *Stanley*, 569 S.W.2d at 657; *Hale*, 172 Ark. at 83.

The Court finds that this holding does not conflict with the principle cited by Hiscox stating that an insurance company has no duty to investigate the accuracy of answers in an application. *See, e.g.*, *Platte River Ins. Co. v. Baptist Health*, Case No. 4:07-cv-0036-SWW, 2009 WL 2015102, at *15 (E.D. Ark. Apr. 17, 2009). That principle seems to presume that the insurance company possessed no prior knowledge regarding any alleged false statement, which the Court finds is a genuine question of fact regarding the 2016 burglary loss. Oddly, the only precedent Hiscox cites for this principle are a line of federal cases instead of any Arkansas law. *See Baptist Health*, 2009 WL 2015102, at *15 (citing *Twin City Bank v. Verex Assur. Inc.*, 733 F. Supp 67, 71 (E.D. Ark. Fe. 15, 1990) (citing *Countryside Cas. Co. v. Orr,* 523 F.2d 870, 873 (8th Cir.1975) (citing *M.F.A. Mut. Ins. Co. v. Dixon*, 243 F. Supp. 806, 815 (W.D. Ark. July 20, 1965)))). The only Arkansas case cited by any of those federal cases to support this principle did not involve an insurance contract or an agent's knowledge. *See Orr*, 523 F.2d at 873 (citing *Fausett & Co. v. Bullard*, 229 S.W.2d 490, 492 (Ark. 1950) (examining alleged misrepresentations made prior to the sale of a dwelling home)).

### 4. 2016 Non-Renewal

A Hiscox insurance policy Taylor had for the Hot Springs Property was non-renewed by B&W in December 2016. ECF Nos. 131-12, 131-13; ECF No. 131-4, pp. 9-22, 46-49, 74-77.

Hiscox argues that Taylor made a material misrepresentation by not disclosing that 2016 non-renewal in response to an application question asking "Has any coverage been declined, cancelled or non-renewed during the last three (3) years?"  ECF No. 132, pp. 7-8, 20-21.[18]  Hiscox contends that non-disclosure of the 2016 non-renewal is indisputably material because B&W declined to provide a quote for coverage at the Hot Springs Property in 2017 for the same reason it non-renewed the 2016 policy: lengthy ongoing construction at the Hot Springs Property.  Hiscox notes that the same construction was ongoing in 2018 when Taylor applied for the Policy.  Hiscox asserts that testimony shows that if Taylor disclosed the 2016 non-renewal in her application, B&W would have inquired into the cause of the non-renewal and declined to provide a quote for coverage just as it did in 2017.  Hiscox concludes that there is no genuine dispute that Taylor made a material misrepresentation regarding the 2016 non-renewal that entitles Hiscox to rescind the Policy.

In response, Taylor argues that there are genuine questions regarding what knowledge B&W imputed to Hiscox regarding the 2016 non-renewal and the reason for the 2016 non-renewal. ECF No. 136, p. 19-22.  Taylor contends that the record shows that B&W clearly had knowledge of the 2016 non-renewal of the prior Hiscox policy.  Taylor notes that B&W issued that policy, renewed that policy multiple times, and ultimately non-renewed that policy.  Taylor asserts that knowledge of the 2016 non-renewal would be imputed to Hiscox because all of B&W's actions for this policy were done within the scope of their agency for Hiscox.  Taylor concludes that this prior knowledge of the 2016 non-renewal would bar Hiscox from rescinding the Policy.  Taylor also argues that the record indicates that the 2016 non-renewal occurred because her insurance agent failed to provide B&W with timely updates as to the construction status at the Hot Springs

---

[18] Taylor did disclose that she had an insurance policy with American Zurich that would non-renew on February 15, 2018.  ECF No. 1-2, p. 6.

Property and not simply because construction was ongoing.  Taylor contends that this raises a genuine question as to why the prior policy was non-renewed in 2016 and whether ongoing construction was material to issuing the Policy.  Taylor also notes that her ability to obtain insurance from Zurich North America[19] to fill the gap between the non-renewal of the prior policy and the Policy issued in 2018 indicates that the ongoing construction was not material to obtaining insurance for the Hot Springs Property.  Hiscox does not directly address the 2016 non-renewal in its reply, instead offering its broader arguments regarding imputed knowledge and materiality. ECF No. 142, pp. 8-9, 12-13.

The Court finds that Hiscox's request for summary judgment on this issue must be denied because a genuine question of fact exists as to Hiscox's prior knowledge of the 2016 non-renewal of Taylor's prior policy at the Hot Springs Property. Just as it determined regarding the 2016 burglary loss, the Court finds that there is no genuine dispute that B&W was acting in the scope of its agency for Hiscox when it allegedly received knowledge or notice of the 2016 non-renewal. This involved a Hiscox policy issued to Taylor by B&W, renewed multiple times by B&W, and then non-renewed in 2016 by B&W.  As the Court already stated, the only reasonable inference that can be drawn from the record is that B&W was acting as an agent for Hiscox when managing this prior policy at the Hot Springs Property.  *See Dodds*, 880 S.W.2d at 313.  Likewise, there is sufficient evidence in the record creating a genuine question regarding whether B&W received knowledge or notice of the 2016 non-renewal because it is undisputed that B&W effectuated the non-renewal of that prior Hiscox policy.  Again, such knowledge would be imputed to Hiscox through B&W acting as its general agent. *See Hill*, 487 S.W.2d at 631; *and see Dodds*, 880 S.W.2d

---

[19] Taylor's response refers to the insurer as "Zurich North America."  However, her application for the Policy and testimony from insurance agent Hodges refer to this insurer as "American Zurich."  ECF No. 1-2, p. 6; ECF No. 131-5, p. 28.  The Court will refer to this insurer as "American Zurich" from this point onward.

at 314-15.  If such knowledge is found to be imputed to Hiscox, then Hiscox would be estopped from rescinding the contract on grounds that it had full knowledge of when the Policy was issued. *See Caldwell*, 2015 Ark App. 719, at 4; *Stanley*, 569 S.W.2d at 657; *Hale*, 172 Ark. at 83.

The Court also finds that there is a genuine question regarding whether this alleged misrepresentation was material to issuing the Policy.  Taylor has pointed to evidence in the record indicating that ongoing construction was not the lone cause of the 2016 non-renewal of the prior policy covering the Hot Springs Property.  An email from a B&W underwriter to Taylor's insurance agent suggests that the B&W would entertain renewing the policy amid ongoing construction if Taylor provided "an updated builders risk supplemental application."  ECF No. 136-12, p. 3.  Another email from B&W personnel regarding the 2016 non-renewal states that the prior policy was not renewed because requested information was not received and thus a quote for coverage could not be formulated.  ECF No. 136-14, p. 2-3.  This casts doubt on the assertion that the mere fact of ongoing construction was the reason the prior policy was non-renewed in 2016. Correspondingly, this creates a genuine question of whether disclosure of the 2016 non-renewal would have resulted in the Policy not being issued or being issued on different terms.  Also, Taylor's procurement of a builder's risk policy from American Zurich the year prior to the Policy being issued offers support for the position that the ongoing construction did not generally preclude obtaining insurance coverage for the Hot Springs Property. [20]  Accordingly, this genuine question regarding materiality would preclude granting Hiscox summary judgment on this ground for rescission of the Policy.  *See Brooks*, 741 S.W.2d at 265 (noting that the insurer has burden of proving materiality to justify rescission based upon a misrepresentation).

---

[20] While the parties do not point to a document in the record representing the American Zurich policy, the parties do not dispute that Taylor had this policy from 2017 to 2018.  Undisputed deposition testimony from the insurance agent who helped Taylor procure the American Zurich policy indicates that the policy existed.  ECF No. 131-5, pp. 17, 26-28.

### C. Breach of Contract in the Alternate

Hiscox argues that even if the Policy was not rescinded based upon any material misrepresentation, the Concealment Or Fraud section of the Policy precludes coverage. ECF No. 132, p. 21-22. Hiscox notes that the language of this section declares that there will be no coverage under the Policy if the "insured" has "made false statements; relating to this insurance[.]" Hiscox contends that Taylor indisputably made false statements in her application for the Policy and that the plain language of the Policy therefore bars any coverage for the fire loss at the Hot Springs Property.

In response, Taylor argues that she did not breach this section of the Policy because any false statement was not intentional. ECF No. 136, pp. 6-7, 22-23. Taylor contends that the law requires that any misrepresentation or incorrect statement made in her application be intentional for coverage to be denied. Taylor further contends that the language of the Concealment Or Fraud section requires an intent to conceal. Taylor asserts that the record indicates that there is a genuine factual question as to whether she intentionally made any false statement or knowingly attempted to deceive in her application answers.

In reply, Hiscox generally argues that a misrepresentation does not have to be made with fraudulent intent to permit rescission of an insurance policy. ECF No. 142, p. 2-7. However, Hiscox does not directly address its alternate argument regarding the language of the Concealment Or Fraud section of the Policy.

"[T]he construction and legal effect of written contracts are matters to be determined by the court[.]" *Elam*, 57 S.W.3d at 170 (quotation omitted). The Arkansas Supreme Court has outlined the general rules for insurance contract interpretation and enforcement:

> When reviewing insurance policies, this court adheres to the long-standing rule that, where terms of the policy are clear and unambiguous, the policy language controls, and absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms. We have also found it unnecessary to resort to rules of construction in order to ascertain the meaning of an insurance policy when no ambiguity exists. In other words, the terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid.

*Vincent v. Prudential Ins. Brokerage*, 970 S.W.2d 215, 216 (Ark. 1998) (internal citation omitted).

The Court finds that the Concealment Or Fraud section of the Policy precludes coverage for the fire loss at the Hot Springs Property. The terms of this section are clear and unambiguous and thus not susceptible to a construction against Hiscox. *See id*. As the Court found above, Taylor made a misrepresentation by not disclosing the foreclosure at the Fairfield Bay Property in her application. That misrepresentation is clearly a false statement. Likewise, that false statement was undoubtedly one "relating to this insurance" because it was made when applying for the Policy. Taylor is incorrect in asserting that intentionally making a false statement was required under the language of the Concealment Or Fraud section. The clause regarding false statements contains no such requirement as the clauses preceding it do. Also, the "or" that precedes the clause regarding false statements indicates it is a separate ground for exempting coverage and not tethered to the clauses requiring intentional misrepresentation or fraudulent conduct. Further, misrepresentations do not need to be intentional to permit coverage exemption.[21] *See McQuay*, 98 S.W.3d at 458. Accordingly, the Court finds that the Concealment Or Fraud section of the Policy precludes coverage for the fire loss at the Hot Springs Property because of Taylor's misrepresentation regarding the Fairfield Bay Property foreclosure.

---

[21] Taylor's citation to *Warren v. State Farm Fire & Cas. Co.* is not persuasive because the language of that insurance policy defined material misrepresentations to require "intentionally" concealing or misrepresenting a material fact relating to the insurance. 531 F.3d 693, 698-99 (8th Cir. 2008). There is no such requirement for the false statement clause in the Concealment Or Fraud section of the Policy.

### D. Taylor's Counterclaims

The Court's finding regarding Hiscox's request for summary judgment requires the Court to conclude that Taylor's counterclaims fail.

Taylor's breach of contract counterclaim against Hiscox alleges that the fire loss at the Hot Springs Property was clearly covered under the Policy and that Hiscox failed to meet its obligation to provide coverage.  ECF No. 25, p. 15-18.  Taylor's breach of contract claim fails because the Court has determined that Taylor's material misrepresentation made the Policy null from the outset. *See Citizens Bank*, 2014 Ark. 20, at 4, 431 S.W.3d at 295 (noting that rescission functions to void the policy as if it never existed).  Without a valid and enforceable contract between Taylor and Hiscox, Taylor's breach of contract claim cannot succeed. *See Smith v. Eisen*, 245 S.W.3d 160, 168-69 (Ark. 2006).  Taylor's claim for bad faith alleges that Hiscox knew that the Policy covered the loss at the Hot Springs Property and intentionally formulated false reasons to deny providing the coverage it owed.  ECF No. 25, p. 18-20.  Taylor's claim of bad faith must fail because of the Court's finding that there is no valid contract between the parties. *See Columbia Nat. Ins. Co. v. Freeman*, 64 S.W.3d 720, 723 (Ark. 2002) (noting that a claim of bad faith requires that there be a "just obligation" between the insurer and the insured).  Taylor's claim for improper rescission alleges that she made no material misrepresentation justifying rescission and that Hiscox failed to return the premiums she paid for the Policy.  ECF No. 25, p. 20-21.  The claim for improper rescission necessarily fails in light of the Court's determination that Hiscox properly rescinded the Policy based on Taylor's material misrepresentation regarding the Fairfield Bay Property.  Further, Taylor's assertion in this counterclaim that rescission was improper because the premiums for the Policy were not returned is contradicted by the undisputed evidence in the

32

record showing that checks for the premium amount were mailed to her but were rejected by her attorney and sent back.[22]  ECF No. 131-6.  Accordingly, Taylor's counterclaims must be dismissed with prejudice.

## IV. CONCLUSION

For the reasons stated above, the Court's prior Order Denying Motions Summary Judgment (ECF No. 151) is hereby **VACATED**.  The Count finds that Plaintiff Hiscox's Motion for Summary Judgment (ECF No. 129) should be and hereby is **GRANTED**.  Hiscox properly rescinded the Policy and owes no coverage to Defendant Taylor for the 2018 fire loss at the Hot Springs Property.  In light of the above ruling, Defendant Taylor's Motions for Summary Judgment (ECF Nos. 124 & 127) are hereby **DENIED** as **MOOT**.  Defendant Taylor's counterclaims (ECF No. 25, p. 14-23) are hereby **DISMISSED WITH PREJUDICE**.  A judgment of even date consistent with this opinion shall issue.

**IT IS SO ORDERED**, this 31st day of August, 2023.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[22] Taylor ineffectively attempts to dispute this in her response to Hiscox's Statement of Undisputed Material Facts. Taylor responds "Denied" to the asserted fact that the premium was returned, while also admitting that Hiscox mailed checks to her, because the checks were sent back and never cashed.  ECF No. 137, p. 13.  The Court does not view this as creating a genuine dispute regarding whether Hiscox returned the premium to Taylor.